SELF *v.* KIRKPATRICK.

4-4789

Opinion delivered November 15, 1937.

*Ezra Garner* and *Donham & Fulk,* for appellant.
*McKay & McKay,* for appellee.

MEHAFFY, J. This action was commenced by the appellee to recover for the death of a child four years old, who was struck and killed by an automobile. The father of the child, as administrator of the estate,

brought suit to recover for the benefit of the estate, in the sum of $400, and to recover in his own right, for loss of services and funeral expenses, in the sum of $2,600.

There was a jury trial and verdict and judgment for $2,600 for the father, and there was nothing awarded to the estate. The case is here on appeal.

On February 4, 1935, the appellant, a traveling salesman, was driving from Texarkana, Arkansas, to Homer, Louisiana, and his route took him through the city of Magnolia, Arkansas. He left Texarkana about one o'clock in the afternoon, and the accident occurred about three-fifteen as he was approaching Magnolia on highway No. 82.

The appellant's answer denied all the material allegations of the complaint as to his negligence, and alleged that the appellee was guilty of contributory negligence in permitting his child to play and run about the public highway, and to run in, upon and across the same, without exercising proper care and caution for the protection and safety of such child.

Eugene Kirkpatrick, father of the child, testified in substance as follows: That he was the father of Edgar Martin Kirkpatrick and administrator of his estate; that for the past three years he had lived one mile out on the Waldo highway; when he moved there he built a fence on the south side and a gate, but did not put a lock on the gate; he made these improvements to keep his children in the yard; at the time he had seven children, the oldest being twenty-one years of age, and the youngest four years and three months. He was not present when the child was hurt; the child that was killed was four years old; he went to the hospital immediately after being notified of the accident, saw the child and he was waving his arms and seemed to be in great pain; later on he examined the highway; it is twenty-one steps from where appellee's driveway joins the highway to the filling station pumps; it is possibly 200 yards from the driveway back on the other side of Cochran's house; the highway is straight on to the railroad, and anyone could see at least 400 yards; he examined the tracks; the main road

was dry and graveled; there was a pole thirty-seven steps from his driveway to where appellant turned across the highway where the child was hit and knocked fourteen steps into the ditch. A person coming from Waldo to Magnolia would pass appellee's driveway on the left; you could easily see 200 yards; the burial expense of the child was $100. This is a public highway and there is lots of traffic there; the accident happened about three-thirty in the afternoon; witness saw where Mr. Self struck the gravel, which was about ten feet from where he hit the child; when he got to the hospital the child was on the table and he stayed there until they took him into the operating room, about forty minutes. He examined the tracks; the fence is thirty-nine inches high. His older children could open the gate; he never allowed them to play there; they played back of the house; he frequently sent his older children across the road to Harriman's store, but never allowed his younger children to go; the skidding of appellant's car was a gradual skid not from throwing on the brakes; the back end swung around east and then south; he never allowed his children to play there; his wife looks after things at the house; the child was very healthy and bright.

Ralph Harriman testified in substance that he lived at the cotton mill directly across the street from a garage; had lived there eight years; saw the car strike the child; he was standing in front of his station and the child was also there; saw the car coming down the road when it was about 185 or 186 steps away; does not know how fast it was going; but it was going very fast and above the average; when the child started across the road the appellant's car was about 185 steps up the road; the child went directly across the highway and never did turn back; cannot say whether appellant slowed up until he hit the child; he was coming down the center of the road, and when about 34 or 35 steps back, he turned to the extreme left side of the road toward Kirkpatrick's house; when the child was struck he was on the extreme left shoulder; the child was not in the habit of crossing the highway. Witness stepped the distance the child

was thrown after being struck by the automobile; there were other children on the other side of the automobile. The child was by the north pump even with the curb; he called his attention to the car which was coming, but did not try to stop him because he did not think he was in any immediate danger; he was about ten feet from the child; when he called the child's attention to the car, he was half way across the street; does not remember what appellant said when witness picked the child up; the car was about 40 degrees angle across the road headed east; the children on the other side of the road were about seven to twelve years old.

Miss Gibland Cochran testified in substance that she lived north of where Kirkpatrick lived; was at home in the house at the time of the accident; noticed the car when it passed; it was going about fifty miles an hour; it was going at such a rate that it attracted her attention; she did not see the accident.

Fred Dean testified that he went to the hospital and the child was groaning and tossing his arms acting like he was in great pain.

J. M. Self, appellant, testified in substance that he is a salesman twenty-nine years old, and lives at Jackson, Mississippi; the accident happened on February 20, 1935; he was alone driving a 1934 Chevrolet coach, which was about nine months old; the car was in perfect condition; he left Texarkana that day about one o'clock in the afternoon going to Homer, Louisiana; it is about 60 miles from Texarkana to Magnolia; the accident occurred at about three-fifteen as he was coming into Magnolia; was driving 20, 25 and 30 miles an hour; when he approached the Harriman filling station about 150 yards away, he was driving 35 or 40 miles an hour; at the top of the incline he saw these children at the left of the road and began to check the speed of his car and blow the horn; there were weeds on the side of the road and he could not see the filling station; as he got to where he could see the station he further checked the speed of his car; did not see the little boy; if he had seen the

child about 30 yards from him as he came around 35 or 40 miles; he would have checked his speed; when he first saw the child he was standing there by one of the pumps; also saw Mr. Harriman standing at the pump; at that time there was no indication that the child was going to run into the road; when he got close to the station the child darted out into the road and he immediately turned his car to the right toward the station, and when the child left the center of the road he turned to the right and then to the left; there was no possible way to turn to the right to avoid striking the child; he put on the brakes and when he struck the child was going 5 or 10 miles an hour; he knocked the child about 5 feet; the accident was unavoidable; he was not going 60 miles an hour; the child was taken to the hospital and was not conscious at any time; it breathed some, but gave no indication of consciousness; stayed at the hospital about an hour and a half; the child died at 8:15 that night; stayed in Magnolia that night; the sheriff sent for him and he went to the sheriff's office; the sheriff told him to stay in Magnolia that night, and the next morning told him he could leave; when 150 yards away from the place of the accident he was driving 35 or 40 miles and checked his speed to 20 or 25 miles; noticed the child playing there; drove about 25 miles an hour until he was within thirty steps of the station; applied his brakes when he was about 15 or 20 yards away at the time the child started across the road; the child was confused and had he gone straight across the road there would have been no accident; the child was on the left side of the highway, but not on the shoulder; made a statement to the sheriff; there were two other men there; but did not make the statement that he was going 60 miles an hour and continued that speed until he got too close to stop.

Dr. Joe Rushton testified that the child was brought to the hospital and Mr. Self was with him; the boy was bloody from head to foot; shocked and severe lacerations of the head; compound fracture of the skull; numerous bruises about the body and a fractured leg; he

was not conscious; he lived until about eight o'clock and did not regain consciousness.

S. J. McCollum testified that he was sheriff of Columbia county at the time of the accident; knows Mr. Self; called him into the office and got a statement, at which time Clarence Duhond and Mr. Raiford were present; Mr. Self said at the time, when he saw the children he was too close, going about 60 miles an hour.

Clarence Duhond and Mr. Raiford testified to substantially the same facts as the sheriff.

In support of the motion for a new trial, Ezra Garner testified that while Judge Britt was instructing the jury, Mrs. Eugene Kirkpatrick, mother of the boy that was killed, arose back in the court room, clapping her hands and shouting and mumbling something about her boy; the judge requested the lady be removed from the court room. Eugene Kirkpatrick went back into the court room and assisted in carrying his wife out of the room; she was screaming and clapping her hands; she was about fifty feet from the jury; the court instructed the jury to disregard the incident and not let it have anything to do with the verdict; the court ordered the clerk to call the jurors who tried the case and only two of them knew who the woman was; the others did not know her, and each of them testified that the action of Mrs. Kirkpatrick did not influence them.

Appellant contends that the accident was unavoidable. It appears from appellant's own testimony that he was driving 25 or 30 miles an hour and saw the children, and made no effort to apply the brakes or check the speed of his car until he was within 30 yards of the children. There is sufficient evidence set out above to justify the submission to the jury the question of appellant's negligence.

While there is some conflict in the evidence, the question of the negligence of the appellant was for the jury, and not for this court.

There is evidence to the effect that the child started across the street a sufficient distance ahead of the automobile to have gotten across the street in safety, and

the evidence on the part of the appellee, also, showed that the child went straight across the street, did not stop or turn back.

Persons operating an automobile and seeing children ahead of them must exercise such care as a man of ordinary prudence would exercise under the circumstances, and whether appellant did that was a. question of fact in this case, and there was substantial evidence tending to show that he did not exercise such care.

Appellant calls attention to *Morel* v. *Lee*, 182 Ark. 985, 33 S. W. (2d) 1110. The court said in that case: "Ordinary care, however, is a relative term, its interpretation depending upon the facts and circumstances of each particular case; and, although drivers of automobiles and pedestrians both have the right to the use of the streets, the former must anticipate the presence of the latter and exercise reasonable care to avoid injuring them, care commensurate with the danger reasonably to be anticipated."

Drivers of automobiles and pedestrians both have a right to use the street, but the former must anticipate the presence of the latter, and exercise reasonable care to avoid injuring them. Care must be exercised commensurate with the danger reasonably to be anticipated. What is ordinary care is a relative term, dependent upon the facts and circumstances of each particular case. *Murphy* v. *Clayton,* 179 Ark. 225, 15 S. W. (2d) 391.

It is next contended that appellee was guilty of contributory negligence. Appellant relies on and quotes from *St. Louis, Iron Mt. & So. Ry. Co.* v. *Freeman,* 36 Ark. 41. In that case the court held that the circumstances under which the child was left, the conduct of the parents, the speed of the train, the watchfulness of employees, and measures taken to avert danger were all questions for the jury. In that case the railroad company asked the following instruction: "If the child was under the age of discretion, and was on the railroad, where trains were frequently passing, without a proper attendant, this was negligence on the part of plaintiff, which would preclude his recovery." The court

said: "This instruction was properly refused. It made the facts conclusive of negligence. It was for the jury to determine from all the facts whether such explanation of the unfortunate exposure appeared, as would repel the presumption of negligence on the part of the parents."

In this case there was sufficient evidence to submit to the jury the question of the contributory negligence of the appellee. This question was submitted to the jury under proper instructions. *Gates* v. *Plummer*, 173 Ark. 27, 291 S. W. 816.

Appellant, however, calls attention to the case of *St. Louis, Iron M. & So. Ry. Co.* v. *Colum*, 72 Ark. 1, 77 S. W. 596. In that case the evidence shows that Robert Colum drove to the railroad station and carried his son with him, who was at that time about eight years old. The father drove away, leaving his son at the station unattended, and while there, a locomotive switching cars from one track to another shoved a car against, and struck the boy. The evidence was in conflict, and the court said "obscure." One witness testified that the boy was attempting to crawl under the car when he was injured. The testimony of appellant's witnesses was to the effect that the boy stepped upon the railroad track in front of one of the cars while it was from three to six feet from him, and it was impossible to avoid the injury. The court held that the boy was entitled to recover because he was too young to be guilty of contributory negligence, but that the father, in leaving the boy at the station when the engines were switching, was guilty of contributory negligence.

In the case of *St. Louis, Iron M. & So. Ry. Co.* v. *Dawson*, 68 Ark. 1, 56 S. W. 46, a girl between six and seven years of age was run over and killed by the train as she had started on a visit to some companions on the other side of the railroad from her home. The trial court in that case refused to instruct the jury that the father could not recover for loss of services if it was shown that he was guilty of contributory negligence, contribut-

ing to the injury. The case was reversed and remanded for a new trial.

The court, in the instant case, told the jury as to the cause of action in appellee's own right, that even though they might find from the evidence that the defendant was guilty of negligence which resulted in the death of the child, the plaintiff could not recover if he was, himself, guilty of contributory negligence, and further told them that it was the duty of a parent to exercise ordinary care for the safety of a child, and if he failed to do so, and such failure caused the injury or death, then the parent was guilty of contributory negligence.

Negligence is the failure to do something which a person of ordinary prudence would do under the circumstances, or the doing of something that a person of ordinary prudence would not do under the circumstances. And if there is any substantial evidence tending to show either negligence or contributory negligence, the question, under the well settled rules of this court, is for the jury.

Appellant objects to instructions Nos. 5 and 7 given at the request of appellee, but we think these instructions were correct. No. 5 simply told the jury that the burden of proof was upon the defendant to show contributory negligence, and No. 7 stated to the jury that if the plaintiff exercised such care as an ordinarily prudent person would, under similar circumstances, he was not guilty of negligence. There is no error in either of these instructions.

It is next urged that the case should be reversed because of misconduct in the presence of the jury. It appears from the evidence that while the court was instructing the jury, the mother of the deceased child arose in the court room and clapped her hands and mumbled something about her boy. The court immediately directed her to be taken from the court room and instructed the jury that they should not be influenced by what had occurred. We do not think there was any error in this.

Appellant contends that the verdict is excessive, and calls attention to the case of *Interurban Ry. Co.* v. *Trainer,* 150 Ark. 19, 233 S. W. 816. In that case there was a verdict for $5,000, and the court reduced it to $2,500. The girl who was killed was eleven years old, and the $5,000 verdict and judgment was for loss of services.

The child killed in the instant case was four years old and the judgment was for $2,600. In all the cases relied on by appellant, as tending to support the contention that the verdict in this case is excessive, the verdicts were substantially the same as in this case; that is, where they were larger they were reduced to something like $2,500.

We find no error, and the judgment is affirmed.