INSURANCE CO. OF NORTH AMERICA et al. v. SALTZMAN.

Civ. No. 338.

United States District Court
W. D. Arkansas, Harrison Division.

April 17, 1953.

Rector, Cockrill, Limerick & Laser, Little Rock, Ark., for Insurance Co.

Jim Merritt, McGehee, Ark., for V. F. W.

Thomas B. Tinnon, Mountain Home, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Statement

On July 17, 1952, plaintiffs filed their complaint in which they alleged that they were damaged as a proximate result of the negligence of the defendant.

The defendant filed his answer to the plaintiffs' complaint and the case was set for trial on March 9, 1953. On that date the case was submitted to the Court upon the amended stipulation of the parties and the depositions of Bruce Campbell and R. B. Handy, Jr. The Court ordered counsel for the respective parties to submit briefs in support of their contentions and this has now been done.

After considering the pleadings, the amended stipulation of the parties, the depositions, and the briefs filed herein, the Court now makes and files the following findings of fact and conclusions of law, separately stated.

### Findings of Fact

1.

The plaintiff, Veterans of Foreign Wars of the United States, hereinafter referred to as V.F.W., is a corporation organized and existing under the laws of the United States and maintains its national head-

quarters in Kansas City, Missouri. The plaintiff, Insurance Company of North America, hereinafter called Insurance. Company, is a Pennsylvania corporation qualified to do business in the State of Arkansas.

The defendant, B. N. Saltzman, is a citizen and resident of the State of Arkansas and resides in the Western District of Arkansas, Harrison Division.

The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

### 2.

On November 28, 1951, a Ryan Navion Airplane, owned by plaintiff, V.F.W., and being piloted by Bruce Campbell, a salaried employee of said plaintiff, was landed at the Flippin, Arkansas, airport. The Commander-In-Chief of the V.F.W., Frank C. Hilton, was the only passenger in the airplane and was travelling on official V.F.W. business.

Upon arriving at the airport, the pilot did such things as are customarily done by a pilot of a Ryan Navion Aircraft, including leaving all switches, throttles and controls in their normal position. At the request of Mrs. Genevia Crane, wife of the operator of the airport, the pilot left the plane unlocked and the brakes off and disengaged to facilitate the airport employees in properly storing the airplane in the hangar overnight.

After the pilot and his passenger had departed from the airport, the defendant, B. N. Saltzman, who is a regularly licensed and practicing physician in the area of Mountain Home, Baxter County, Arkansas, and who is also a licensed pilot of his own aircraft, approached the Ryan Navion Airplane with an intention of examining it since he had been considering purchasing such an aircraft. Without permission or knowledge of Hilton, Campbell or Mrs. Crane, the defendant entered the cabin of the airplane and began examining and operating various instruments, switches, button controls and equipment. The defendant, after operating the controls for several minutes, unintentionally started the airplane in motion. He attempted to stop the movement of the airplane but was unable to do so because, not being familiar with the Ryan Navion Airplane, he could not locate the brake actuating controls. While the defendant was searching for the brake control on the floor of the aircraft cabin, it traveled approximately 90 to 100 feet and crashed into the side of the Flippin Airport hangar, causing extensive damage to the aircraft.

### 3.

The airplane was damaged in the sum of $3,532.08, of which amount the plaintiff, Insurance Company, paid the sum of $3,232.08 pursuant to the terms of its Aircraft Hull Policy of Insurance covering said airplane, and the plaintiff, V.F.W., paid the sum of $300 under the deductible provision of the policy.

Insofar as appears from the evidence, the airplane was in as good condition after being repaired as it was before it was damaged, and it follows that the sum of $3,532.08 represents the difference in the market value of the airplane immediately before and immediately after the injury.

### 4.

After the accident, V.F.W. paid $61.81 for long distance telephone calls made in connection with said accident. These calls included notification of V.F.W. headquarters of the accident, notification of the insurance companies, filing of an accident report with the Civil Aeronautics Authority, checking the progress being made in repairing the airplane, etc.

### 5.

As Commander-In-Chief of the V.F.W., Mr. Hilton is required to travel extensively, and only by traveling in a private airplane can he keep pace with the crowded itinerary which he follows. For a short time after the accident he maintained his schedule by traveling on commercial aircraft, and for this travel the V.F.W. paid the sum of $220.61.

### 6.

Later, an airplane was rented for the purpose of keeping the itinerary of Mr.

Hilton. Under the rental agreement, V.F.W. paid $28 per hour as well as the expenses for fuel, oil, hangar, etc. The airplane was used for 85 hours and V.F.W. paid the sum of $2,380 for the rental of said airplane while its damaged Ryan Navion Airplane was being repaired.

### 7.

When the airplane was rented by V.F.W., it was necessary to transfer the liability insurance policy from the damaged aircraft to the rented aircraft, since the rental contract did not provide insurance in the event of damage. For this transfer V. F. W. paid the sum of $28.

### 8.

The pilot of the damaged aircraft, Bruce Campbell, receives an annual salary of $6,500. From the date of the accident until V.F.W. rented another airplane, a period of four weeks, Mr. Campbell was paid his regular salary although he was not piloting an airplane for V.F.W. During this period the V.F.W. paid him the sum of $418.60 as his salary.

### 9.

Mr. Campbell also has an expense account covering hotel expenses, transportation, telephone calls, telegrams, and things of that nature. In addition, he is paid a per diem of $7.50 which is primarily a food allowance.

Subsequent to the accident, Mr. Hilton did not feel that the damaged airplane would be safe for travel and he requested Mr. Campbell to obtain information concerning the purchase of a new airplane. Mr. Campbell made a trip for the purpose of getting this information, and for this trip he was paid his expenses and per diem by V.F.W. Mr. Campbell also made a trip for the purpose of renting another airplane and a trip to test fly and take delivery of the Ryan Navion Airplane after it was repaired. On each of these trips he received his expenses and per diem from V.F.W. The total amount of Mr. Campbell's expenses paid by V.F.W. on these trips was $522.75.

### 10.

In following his extended itinerary, Mr. Hilton carried with him a considerable amount of baggage. After the accident it was necessary for him to ship part of this baggage to his headquarters at Kansas City, Missouri. V.F.W. paid the sum of $6.38 for this shipment.

### Discussion

The facts being undisputed, and this being a diversity suit, the Court is required to ascertain and apply the law of the State of Arkansas to the facts in deciding the issues presented herein.

Negligence, under Arkansas law, is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the same or similar circumstances. St. Louis-San Francisco Ry. Co. v. Ward, 197 Ark. 520, 524, 124 S.W.2d 975; Self v. Kirkpatrick, 194 Ark. 1014, 1022, 110 S.W.2d 13.

Doubtlessly, the actions of the defendant in meddling with the airplane amounted to a "doing of something that a person of ordinary prudence would not do," and thus he clearly was guilty of negligence and is liable for any injuries and damage proximately resulting from his negligence.

Before negligence may be said to be the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligent act, and that it ought to have been foreseen in the light of attending circumstances. Ozark Packing Co. v. Stanley, 211 Ark. 749, 202 S.W.2d 352; Hook, Administrator, v. Reynolds, 203 Ark. 259, 261, 156 S.W.2d 242; Southwestern Bell Telephone Co. v. Adams, 199 Ark. 254, 261, 133 S.W.2d 867.

No Arkansas case involving damages to an airplane has been cited to the Court by either of the plaintiffs or the defendant, but there are many Arkansas decisions defining the measure of recovery to be applied in cases where automobiles are damaged, and the Court perceives of no

reason why the same rules of law would not govern in determining the recovery of damages to an airplane.

■ The rule is firmly established in Arkansas that the measure of property damages arising out of an automobile collision is the difference between the market value of the property immediately before the injury and its market value immediately after the injury. Watson v. White, 217 Ark. 853, 858, 233 S.W.2d 544; United Transports, Inc. v. Johnson, 215 Ark. 411, 415, 220 S.W.2d 814; Golenternek v. Kurth, 213 Ark. 643, 647, 212 S.W.2d 14, 3 A.L.R. 2d 593; Kane v. Carper-Dover Mercantile Co., 206 Ark. 674, 679, 177 S.W.2d 41.

■ However, proof of the amount paid in good faith for repairs necessitated by a collision is sufficient if, when considered along with all the other evidence, it is shown to fairly represent the difference in the market value before and after the injury. Nicholas v. Bingamon, 219 Ark. 748, 244 S.W.2d 782; Watson v. White, supra; Cochran v. Long, 214 Ark. 677, 679, 217 S.W.2d 612; Golenternek v. Kurth, supra; Kane v. Carper-Dover Mercantile Co., supra. An illustration of the application of this rule appears in Kane v. Carper-Dover Mercantile Co., supra, at page 679 of 206 Ark., at page 43 of 177 S.W.2d, where the Court said:

> "The evidence of damage to the plaintiff's truck in the case at bar, is peculiar in that no witness was asked, or testified, concerning the fair market value of the truck before and after the collision. Instead, the proof was confined entirely to what the plaintiff paid for labor and parts and repairs; and the admitted total of these items was $187.19. That was the only estimate of damages shown. For all that appears in this record the truck was in as good a condition after the repairs, as before the collision, so we must conclude from this record that the damages to the truck amounted to $187.19."

■ In most jurisdictions, if the damaged vehicle is repairable the owner may recover for the loss of use of the vehicle and for related necessary incidental expenses while it is being repaired, as well

as the cost of repair of said vehicle. Blashfield's Cyclopedia of Automobile Law and Practice, Volume 6, Part I, Section 3417, Page 58; 169 A.L.R. at page 1088. See also, Lyle v. Seller, 70 Cal.App. 300, 233 P. 345; Cook v. Packard Motor Car Co., 88 Conn. 590, 92 A. 413, L.R.A.1915C, 319; 169 A.L.R. 1099; 25 C.J.S., Damages, § 48, p. 530.

■ But, under the Arkansas law, a person cannot recover damages for the loss of use of his automobile pending repair. In Kane v. Carper-Dover Mercantile Co., supra, at page 680 of 206 Ark., at page 44 of 177 S.W.2d, the Court said:

> "In some jurisdictions loss of use of an automobile, pending repair, is a recognized item of damages. Annotations on this point may be found in 4 A.L.R. 1350, 32 A.L.R. 706, 32 A. L.R. 711, 78 A.L.R. 910, and 78 A.L.R. 917. But regardless of the holding of other Courts, we have held that loss of use of an automobile pending repair is not an element of damages. In Madison-Smith Cadillac Company v. Wallace, 181 Ark. 715, 27 S.W.2d 524, this question was definitely decided; and that case is ruling here."

See also, 169 A.L.R. at page 1088.

The plaintiff, V.F.W., in recognition of this rule of law and in an effort to evade its impact, states in its brief, "There are cases in this jurisdiction where damages were denied for loss of use of a vehicle during the time it was being repaired. There is no authority either way in this State for the renting of a substitute during the period of repair. Replacement is to be distinguished from loss of use. The loss of use of this airplane would have been the fair market value for the rental of the Ryan Navion ship at the time and place. It is noted that there is no evidence in this record of such rental value. The damages sought as the expense of replacement is stated in: * * * '25 C.J.S.—Damages, Section 48, (P. 530). *Under circumstances such that the loss of the use of an injured motor vehicle is an element of the damage*, plaintiff may recover an amount necessarily expended for the rent or hire of a similar vehicle with which to per-

form the services usually performed by the damaged car, during the period of repairs * * *.'" (Emphasis added by the Court.)

The fallacy of plaintiff's position is demonstrated by the underlined language, i. e., only where *loss of use* is an element of damages may the amount expended for rent of another vehicle be recovered, but as heretofore stated, *loss of use* is not an element of damages in Arkansas. Differently stated, since the plaintiff cannot recover for loss of use of the airplane, likewise the plaintiff cannot recover for the rental of another airplane, the payment of plaintiff's pilot, and the various other items not directly related to the repair of the airplane.

In Jeter v. Everette, 173 Ark. 25, 291 S. W. 813, the Court at page 27 of 173 Ark. at page 814 of 291 S.W., said:

"* * * there was no testimony whatever tending to show that the telephone call or washing the car, or greasing it, were necessary expenses in restoring the car to the condition it was in before the collision. For the lack of testimony to support the recovery of these items, the judgment must be modified to exclude them * * *."

This language is susceptible of two possible interpretations. First, the Court, in indicating that the named items might have been recovered if they had been necessary expenses in restoring the car to its prior condition, possibly intended to state a rule permitting recovery for all expenses related to the repair of the car. Second, and more logically, the Court may have intended to state a rule allowing recovery only for amounts necessarily spent in the actual repair of the car, i. e., money spent for labor, parts and repairs to place the damaged vehicle in as good condition as it was prior to the accident. In view of the later decisions, it seems that the second possible interpretation is decidedly more plausible. In other words, as heretofore stated the sole measure of property damages in such a case is the difference between the market value of the property before and after the injury. Watson

v. White, supra. But, proof of the amount paid for repairs is sufficient *if such amount is shown to represent the difference in the market value before and after the injury.* Watson v. White, supra; Kane v. Carper-Dover Mercantile Co., supra. That is, if the repairs place the vehicle in as good condition as it was prior to the accident, then the cost of repair properly represents the difference in the value before and after the injury. However, it seems that this would be true only if the cost of repair is confined to items, such as labor and parts, which add actual value to the damaged vehicle and which place it in the condition it was prior to the injury.

But, regardless of which of the two possible interpretations is correct, the result in the instant case would be the same. The plaintiff, V.F.W., in its brief lists the amounts it expended, exclusive of the amount paid for the actual repair of the airplane as follows:

| | | |
|---|---|---|
| (a) | * * * | |
| (b) | Telephone Calls | $ 61.84 |
| (c) | Commanders travel | 220.61 |
| (d) | Removal of passengers baggage | 6.38 |
| (e) | Rent of ship to replace damaged airplane | 2380.00 |
| (f) | Salary of pilot | 418.60 |
| (g) | Expenses of pilot | 522.75 |
| (h) | Endorsement of Insurance policy to rented ship | 28.00 |

If the second possible interpretation is correct, as the Court believes it is, plaintiff would not be entitled to recover for any of the listed items since none of them were necessary for the repair of the airplane and none of them added any value to the damaged airplane. In other words, none of these items have any connection with a determination of the difference between the market value of the airplane before and after the injury.

Should the first possible interpretation be correct, the plaintiff is in no better position. The only items which could possibly be considered as even relating to the repair of the airplane are the amounts

expended for the. actual repair of the airplane, several telephone calls concerning the repair, and the salary and expenses of the pilot during the trip to Fort Worth to take delivery of and to test-fly. the damaged airplane after it was repaired.

Clearly plaintiffs are entitled to recover the amount actually expended for the repair, $3,532.08, of which amount V.F.W. is entitled to $300 and Insurance Company is entitled to $3,232.08. However, with reference to the other items which might have been connected with the repair of the airplane, the state of the proof renders it impossible for the Court to ascertain the amounts spent for these items. The plaintiff, V.F.W., assuming that the defendant was liable for all telephone calls made concerning the accident and for all the salary and expenses paid to the pilot during the time the pilot was idle, only attempted to prove the total amounts spent for these items and made no effort to itemize the amounts spent solely with reference to the repair of the airplane. Therefore, even. if the Arkansas law permitted recovery for all items relating to the repair of a damaged airplane, the plaintiff has failed to prove that any of the items claimed as damages were so related, or the amount thereof.

Conclusions of Law.

1.

The Court has jurisdiction over the parties to and the subject matter of this action.

2.

The defendant was guilty of negligence which was the proximate cause of the injury to the plaintiff, V.F.W.'s airplane.

3.

The plaintiff, V.F.W., is entitled to recover of and from the defendant the sum of $300.

4.

The plaintiff, Insurance Company of North America, is entitled to recover of and from the defendant the sum of $3,-232.08.

A judgment in accordance with the above should be entered today.