UNITED STATES of America,
Appellant,

v.

Elmer G. COFFEY and Mrs. Elmer G. Coffey, husband and wife, Appellees.

No. 14836.

United States Court of Appeals
Ninth Circuit.

March 29, 1956.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Lester S. Jayson, B. Jenkins Middleton, Attys., Dept. of Justice, Washington, D. C., William B. Bantz, U. S. Atty., William M. Tugman, Asst. U. S. Atty., Spokane, Wash., for appellant.

Powell & Loney, Kennewick, Wash., for appellees.

Before STEPHENS, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This was an action under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., in the Eastern District of Washington for personal injuries sustained by Elmer G. Coffey by the explosion of a 13 pound Mark A & N aerial practice bomb into which he was attempting to drive a bolt by means of blows of a hammer.

Coffey was a farmer who had a hobby of casting bullets. He maintained a "collection" of live ammunition, including one mortar shell the cap of which had not been deactivated. At the time of the accident, he was engaged in teaching a friend how to cast bullets, and, since he had noticed the lead in an object in his possession was apparently harder than that he was then using, he decided to use the material of the latter. Since the object was covered with dirt and corrosion, he beat it with a hammer, and then, noticing a hole which apparently ran through the object, which was filled with dirt, he decided to drive a pin through it, thus causing the accident. His testimony is that he did not know the object was a bomb, but assumed that it was a plumb bob or current measuring device.

The bomb had been found by two brothers-in-law of Coffey while hunting on private property of an adjacent owner some mile and a half away in a dry unformed gulley. The private property upon which it had been found had never been a part of a bombing range. The finders had permission from the owner to hunt upon the land. Two bombs had been found covered with dirt. Without the consent of the owner, the finders delivered the bombs to Coffey, at whose house they were guests, because they knew of his avocation of casting bullets. The accident occurred about a year later.

■ On trial of the case by the court without a jury, the trial judge gave judgment in damages for plaintiff. He found that the injury was the "direct and proximate result" of negligence of agents of the government. Enough has been said to show that this finding, an essential one under Washington law to found liability, was clearly unfounded. In the recital of the events leading immediately to the accident, the government had no part. If it be assumed that there was negligence prior to the time this recital begins, too many intervening events took place for a causal connection with any prior events. This is the squib cause without the necessity of passing the sputtering and explosive squib from the hand of each one who received it. It is a case of the imposition of liability without the element of causation.

■ Plaintiff Elmer G. Coffey was the sole actor in the event which led to the explosion. He was not inexperienced in the possession and handling of bombs and other types of explosive instruments and shells. He was in an area where the atomic bomb was manu-

factured and where there were many bombing fields. Unquestionably, he could have had service personnel advise him what the object was and whether it was dangerous. Plaintiff Elmer G. Coffey was alone responsible for his injuries. A forty-seven year old man, in full possession of his faculties, under all of the circumstances, "beating" an unknown object of this appearance with a hammer, and when that failed to produce results, attempting to drive a bolt through its center, can hardly be relieved from the liability for the result.

 But the law of the State of Washington does not impose liability upon a private person without proof of negligence. In this respect plaintiffs also failed. The evidence upon which they rely may be summarized. During World War II, the Department of the Navy owned and operated a Naval Air Training Station at Pasco, Washington. In November, 1943, this base was converted from a training field to a practice bombing base. All of the events just described took place in Benton County, which is just across the Columbia River from the Pasco Air Station. There was a bombing target range in this county, situate between Benton City and Richland and about ten miles from the place where the bomb which exploded later was found. The Navy used this field exclusively, but there is some evidence that exploded Mark 19 A & N 13 bombs had been found on that field, although the Navy did not use that type. There was also evidence that fragments of this type bomb were found on a place within a few miles of where the discovery of the bomb in issue was made.

There was also evidence that the Army, which did use the Mark 19 A & N bomb, had a bombing field about fifty-five miles away from the field where the bomb in issue was found.

The original complaint charged that the alleged negligence was solely that of employees of the Department of the Navy. After trial, Coffey moved to enlarge this allegation to include Army personnel. Over objection, the court allowed the amendment. The court denied motions by the government to dismiss, and entered findings of fact, conclusions of law and judgment for Coffey against the government.

 The trial court made the following findings as to negligence:

"That the officers and agents of the United States of America were negligent in the following particulars:

"A. Failure to mark said practice bomb with any signs or indications which would reasonably warn persons who might come in contact therewith of the dangerous qualities of said object.

"B. That said personnel were negligent in dropping a practice bomb in such an area with said bomb being constructed in such a manner that the tail fin would readily become detached and said object would then appear to be harmless in nature and show no indication of the fact that it was a bomb.

"C. That said personnel were negligent in dropping said practice bomb in the area herein described, being outside any authorized practice range.

"That the negligence hereinabove set forth was solely caused by the conduct of the agents and employees of the Military Services of the United States of America and occurred while said personnel were acting within the scope of their authority and in the line of active duty and under the circumstances, the United States, if a private person, would be liable to the plaintiff, Elmer G. Coffey, for his injuries and damage resulting therefrom."

These findings are clearly erroneous. There was no evidence of negligence by any officer, agent or employee of the government. There is no direct evidence that the bomb was ever in the possession of the government. While the circumstantial evidence might well

establish this point, there was no evidence of any kind from which inferences could be logically drawn as to other essentials of proof. It is pure guess work to say whether the bomb was previously in the hands of the Army, the Navy or some government contractor. It is unadulterated speculation to conclude that it was dropped on this privately owned land by either service from an airplane. Someone else might have carried the bomb from the depot or the bombing field before or after it had been dropped. It further requires the use of an untrammeled imagination to find that the "dropping" occurred while said personnel were acting within the scope of their authority and in line of active duty, upon which point there is not even a scintilla of evidence. In view of many unauthorized and even positively forbidden flights by service personnel, there cannot be any inference to that effect. There is no evidence as to who took the fins off the bomb or how they happened to be absent. There can be no negligence to use plainer[1] marking on the bomb. The assumption was that the bomb would be dropped in a field owned and controlled by the government and would detonate upon contact with the ground. The fact that one undetonated bomb was found outside such a field did not prove that there was negligence in the failure to use plain markings thereon.

 The trial court relied upon the doctrine of res ipsa loquitur. It was assumed that the explosion of such an instrumentality or its lying in a field unexploded without explanation made a prima facie case. But no explanation was required. A man attempting to drive a bolt with hard blows of a hammer into an undetonated bomb affords a complete explanation of the explosion. While res ipsa loquitur may have substantive implications, it is primarily **a** rule of evidence and burden of going forward with the evidence. Even where applicable, it does not remove from plaintiff the burden of proof as to negligence and proximate cause. This case does not involve employer and employee.

The rule is applied where one party owes a duty to another, and an instrumentality under his exclusive control and management causes injury to another by action in a fashion which is not ordinarily expected unless there were negligence upon his part. The law of Washington is to that effect, if that be applicable, but, if not, that is general common law.

Here the limitations apply. There was no duty of the United States running to Coffey because the bomb had probably some time been in possession of one of its agents. The bomb had not been placed in his hands as an employee of the government. The United States did not have exclusive control or management of the bomb at the time of the accident, or any control at all. Coffey was in full control of the instrumentality and he was the actor.

The law of Washington as to private persons precludes recovery in this case against the United States.

Reversed.

---

1. The bomb was marked, but in such a manner as not to attract notice by a casual observer.