**Nels OTNESS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 7824-A.**

United States District Court, Alaska, First Division, Juneau.

Nov. 23, 1959.

See also 23 F.R.D. 279.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiff.

Roger G. Connor, U. S. Atty., and Jerome A. Moore, Asst. U. S. Atty., Juneau, Alaska, for defendant.

KELLY, District Judge.

On June 13, 1958, plaintiff invoked the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., and instituted suit against the United States to recover damages which allegedly were caused by a collision between the plaintiff's vessel and a maritime aid known as Channel Light No. 54.

The case was tried before the Court, to which the following facts were presented.

On October 21, 1957, personnel of the United States Coast Guard discovered that due to some unknown or unexplained reason, Channel Light No. 54 was not standing in its position in the waters of Wrangell Narrows where it had been placed. Channel Light No. 54 was a 46′ triangular structure with steel legs which supported a platform upon which was placed a flashing beacon for approaching ships. Channel Light No. 54, and other maritime aids, marked the boundaries of a dredged channel which was 100 yards wide and through which ships could pass and avoid dangerous shoals and protruding rocks. From the Court's personal inspection of the site it seems very possible it was struck by an iceberg, due to the presence of many of them moving swiftly in the Narrows. Upon discovering that Channel Light No. 54 was missing, an unsuccessful investigation to find the structure was immediately effected, and on the next day, October 22, 1957, personnel of the Coast Guard again attempted to locate the steel safety marker, but without success. The Coast Guard then issued the following bulletin:

"Wrangell Narrows — Wrangell Narrows Channel Light No. 54 (L.L. No. 2437) has been destroyed. A wire drag in the vicinity of the destroyed light structure has revealed that no part of the structure remains above the contour of the natural bottom."

Soon thereafter the Coast Guard installed a buoy close to the spot occupied by the missing structure. This buoy was not a fixed structure like the channel marker which had disappeared, but swung on a chain and was moved about, its location at any given time at the end of this chain dependent upon the whim of the tides and the currents in the Narrows. No evidence showing that from October 22, 1957, until January 7, 1958, further attempts were made to locate the maritime aid was introduced. The plaintiff introduced expert opinion concluding that the methods employed by the Coast Guard in its attempts to locate the structure were incompetent. There is no evidence that the method employed by the Coast Guard was proper or sufficient. In fact, plaintiff contends that it was improper and defendant admits that better methods could have been employed had better equipment been available.

On the clear evening of January 7, 1958, the fully loaded vessel Seanna was proceeding from Wrangell to Petersburg, Alaska, and at 8:40 p. m. of the same date collided with a submerged and unknown object. At the helm was Gain Samuelson, who had been a fisherman since 1918, had navigated boats from Wrangell since 1923, had traversed the Narrows two or three hundred times, and had passed Structure No. 54 on many occasions. Fifteen minutes after the collision, the captain and crew abandoned the ship, which sank soon thereafter.

Samuelson testified he had come up the channel on the range lights, which would have kept him close to the center of the channel, but as he reached the buoy which had replaced Structure No. 54 he had veered to the right as was customary to continue on up to Petersburg. Before the plaintiff and his crew abandoned the damaged vessel, bearings were taken of the alleged position of the vessel at the time of the collision, fixing the position of the vessel as being on the eastern side of, but still within, the channel in the vicinity where the structure submerged. Expert witnesses for the plaintiff testified that a rock could not have made such a gaping hole in the vessel. Soon after the collision the missing structure was found and when it was raised, paint smears similar in color to that of the bottom of the vessel Seanna and wooden slivers were found on one of the steel legs of the structure, Channel Light No. 54. Lt. Groves, defendant's witness, testified that the structure was on the edge of the channel when it was found. He later testified that the structure was beneath his ship, which was in the dredged channel, when the structure was located. His log book read as follows: "Ship under way at v/c & s attempting to drag structure clear of all traffic in channel." Defendant produced numerous photographs and mathematical computations to negate any possibility that the vessel could have collided with Channel Light No. 54. No evidence rebutted the facts that the structure was in the channel and that when the structure was raised there were paint smears on the structure similar in color to the paint on the bottom of the vessel Seanna.

In determining whether the defendant is liable and the extent of his liability, it will be necessary to treat the elements of actionable negligence, contributory negligence, immunity of the defendant for negligent misrepresentation, and the pertinent rules of the law of damages.

 To establish liability based on negligence, it must be shown that there was a duty owed by the defendant to the plaintiff, that such duty was breached, and that as a proximate result of the breach, plaintiff suffered injury. General Electric Company v. Rees, 9 Cir., 217 F.2d 595; Alabama Great Southern R. Co. v. Raney, 34 Ala.App. 125, 37 So.2d 150. One who voluntarily creates or maintains a condition for the use of others is, in the absence of some privilege, charged with the duty to exercise care to prevent that condition from becoming a source of danger to those who use it. Cummings v. Henninger, 28 Ariz. 207, 236 P. 701, 41 A.L.R. 207. The Coast Guard maintains the maritime aids to navigation in Wrangell Narrows and had done so for a number of years. Evidence was introduced showing that these aids assisted the mariners in negotiating the dangerous passage of Wrangell Narrows and mariners relied upon these aids in traversing the passage. Based on the rules above, the voluntary assumption of caring for these aids to navigation placed a duty upon the defendant to exercise due care in maintaining the aids.

 The defendant, harnessed with the duty to exercise care in maintaining the navigation aids, failed in that duty. Part and parcel of the defendant's duty of maintaining the navigation aids was the duty to reasonably search for missing aids to navigation which could be a menace to life and to property. In support of the plaintiff's allegation that the defendant failed to exercise due care, the plaintiff produced witnesses who stated that the methods employed for finding the structure were improper and not suitable for locating the structure. The Court noted that after two unsuccessful attempts to locate the maritime aid, the defendant abandoned its search for Channel Light No. 4. Coupling the possibility of the presence of the dangerous structure in the channel with the absence of effort to locate it from October 23, 1957, until January 7, 1958, the Court is forced to conclude that the defendant breached its duty to exercise due care. The defendant contends that the success or failure to locate the structure should not be determinative of the breach of the duty to exercise due care. The Court

concurs with that contention. However, it is the decision of the Court that under the circumstances, two incompetent attempts to find a structure of such great dimension, which could well be a menace to navigation, do not satisfy the duty of exercising due care.

■■ Finally, the element of proximate cause must be satisfied before actionable negligence will lie. Hernandez v. Southern Union Gas Company, 10 Cir., 209 F.2d 606. Simply stated, it must appear that the injury was the natural and probable consequence of the act of negligence. Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193. Not only must the injury have been the natural and probable consequence of the negligent act, the injury must have been reasonably foreseeable. Pittsburgh S.S. Co. v. Palo, 6 Cir., 64 F.2d 198. In support of its contention that the negligence of the defendant did not proximately cause the damage to the vessel, the defendant introduced photographs and mathematical computations to rebut the allegations of the plaintiff that the object with which the vessel collided was the structure, Channel Light No. 54. However, the defense did not rebut these two revealing facts: (1) that one of the legs of the structure had paint smears similar in color to that paint on the bottom of the vessel Seanna, and (2) that the structure was in the channel when it was finally located.

■ Tested by the above rules relative to the concept of proximate cause, the damage to the vessel was proximately caused by the negligent acts of the defendant. The negligence of the defendant lay in the incompetent method which was chosen to locate the structure which, if not found, could cause serious property damage. The evidence shows that it was the structure which caused the damage to the vessel. Under the circumstances, it cannot be questioned that one could have reasonably foreseen that such a collision and consequent damage could occur. Thus, the damage to the vessel was proximately caused by the negligent act of the defendant in its search for the structure.

To bar the plaintiff's right to recovery the defendant has interposed the defenses of contributory negligence and immunity of the defendant for negligent misrepresentation.

■ Since this action is brought under the Federal Tort Claims Act, the defense of contributory negligence, if successfully lodged, would constitute a complete bar to recovery. United States v. Coffey, 9 Cir., 233 F.2d 41. To set the stage for testimony to support the defense of contributory negligence, the defendant evoked from witnesses via direct and cross examination that entry into waters outside the dredged channel when the tide was minus 2.2 would constitute negligent seamanship. Not one witness testified that the plaintiff ran his vessel outside the channel. The defendant contends that the leg which the vessel struck must by necessity have been the top leg of the triangular structure, and since leg No. 2, as indicated in the reproduced exhibits, is obviously the leg struck by the plaintiff, it must by necessity have been the top leg and could have been so only if it were also the rusted leg of the structure and its initial broken leg, which would therefore cause the structure to fall in a direction opposite the break, most probably in a southeastern direction outside the channel. From this fact the defendant contends that the plaintiff must have been proceeding in a northwestern direction outside the channel at the time of the collision with the structure. It appears highly probable that the top leg of the submerged structure was the initial broken leg which caused it to topple into the water and might generally indicate the directional path taken by the falling structure. It does not necessarily follow that the leg of the structure with which the vessel collided had to be the leg which originally broke causing the structure to submerge. Many possibilities exist as to how the structure may have fallen, been moved about, bent or twisted, by the currents which are unusually powerful in

this area, or slanted by the uneven bottom of the Narrows. However, it is no conjecture that the vessel collided with the structure. The preponderance of the evidence clearly establishes this fact. The Court finds, likewise, that the vessel was on a proper course and was within the dredged channel when it struck. If the defendant had introduced evidence showing that the plaintiff was not in the channel at the time of the collision, this issue of fact would nevertheless be resolved in favor of the plaintiff, since the unrebutted facts of the presence of the Channel Light in the channel and the paint smears similar in color to that of the bottom of the vessel on the steel leg of the structure compel the Court to find that the vessel was in the channel at the time of the collision and thus the plaintiff was not guilty of contributory negligence.

As a second defense, the defendant injects the immunity from liability of the United States for negligent misrepresentation. The United States is not liable for loss occasioned by the negligent misrepresentation of one of its agents. 28 U.S.C.A. § 2680(h), Clark v. United States, 9 Cir., 218 F.2d 446; Jones v. United States, 2 Cir., 207 F.2d 563. Misrepresentation to which the defendant refers is the bulletin to mariners which stated that Channel Light No. 54 was not above the contour of the natural bottom of the waters of Wrangell Narrows. Although the plaintiff is not entitled to recover for loss occasioned by reliance upon the negligent misrepresentation of the defendant, this immunity does not absolve the defendant of his responsibility to exercise due care for those duties voluntarily assumed. Therefore, since this defense, though valid and successful in part, does not pierce the negligent acts complained of, said defense is ineffective as a bar to recovery.

Finally, plaintiff has alleged that as a result of the injury to his vessel he sustained pecuniary damage in the amount of $16,156.43. While the Court finds that the plaintiff is entitled to recover his full measure of damages, Wooster Feed Mfg. Co. v. Village of Tallmadge, 82 Ohio App. 499, 81 N.E.2d 811, the Court is presented with a difficult question as to what these damages actually were. Generally, the measure of damages for negligent injury to personal property is the difference between the market value of the item before injury and the market value of the item immediately after damage. Rosenblatt v. United States, D.C., 112 F.Supp. 114. However, where the personal property can be restored to its previous condition by repair, cost of repair is the measure of damage, if the cost of repair is reasonable. Insurance Co. of North America v. Saltzman, D.C., 111 F.Supp. 694. It is the value, not the cost, of repairs that is essential. Bader v. Marlin, 160 Wash. 460, 295 P. 160, 78 A.L.R. 914. The Mitkoff Marine Ways, which did a great deal of work (see Exhibits 14 and 15) and the Fryers Machine Shop, which also did a large amount of work (see Exhibit 16) can be presumed to have satisfactorily and completely performed the services for which they charged. Defendant's expert witness, who was the machine shop foreman at the Northern Machine Works and who has handled or supervised the overhaul of better than 100 diesel motors ranging in horsepower from 45 to 1800, testified that a complete overhaul in which the engine is entirely taken apart, all parts completely cleaned, the parts required replaced, and the reassembling, should be completed in from 90 to 100 hours at the most; and that including the replacement of all necessary parts, the cost could possibly run as high as $2,500. Plaintiff alleged that in order to restore the vessel to its condition immediately previous to the collision, he and his helmsman were required to expend 1420 manhours in addition to the efforts of the employees of the Mitkoff Marine Ways and of the Fryers Machine Shop. Plaintiff failed to support this allegation with time sheets, book entries, or any material substantiating the allegation. The Court is hard pressed to find from the evidence presented how and where such a great number of hours could have been productively expended. It is the duty of this Court to attempt

to see that the plaintiff is fairly reimbursed, but by the same token, he is not entitled to make a profit from this unfortunate occurrence. Atlantic Coast Line R. Co. v. Ouzts, 82 Ga.App. 36, 60 S.E.2d 770. It is the plaintiff's duty at all times to endeavor in every way to mitigate the damages. Texas Co. v. Christian, 5 Cir., 177 F.2d 759. Where substantial injury is inflicted on property but the true extent of damages cannot be definitely ascertained, it is the Court's duty to allow such damages as are reasonably conceivable from the evidence and will be adequate and fair, and no more. United States v. Honolulu Rapid Transit Co., D.C., 101 F.Supp. 897.

After a review of all the evidence with respect to damage and the repair costs therefor, the Court finds the defendant liable in the amount of $10,000.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

Judgment in accordance herewith may be submitted.