# Richmond

I. H. Samples and Ernest Samples v. W. L. Trimble.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*Edwin B. Jones* and *J. M. Perry*, for the plaintiffs in error.

*Timberlake & Nelson* and *John M. Colaw*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action by notice of motion was brought by W. L. Trimble to recover damages from I. H. Samples and Ernest Samples for a personal injury received by him as a result of being struck by the automobile of I. H. Samples, which was being driven by his agent, Ernest Samples. The jury found a verdict in favor of the plaintiff in the sum of $2,000. The plaintiff was severely injured—suffering the loss of a leg—and no contention is made that the verdict is excessive.

The first and most important assignment of error challenges the action of the trial court in refusing to set aside the verdict as contrary to the law and the evidence.

The following narration states the case of the plaintiff as established by the verdict of the jury and confirmed by the trial court: The accident occurred on the highway which leads from Monterey in Highland county to Warm Springs in Bath county. The plaintiff, sixty-six years of

age, was the owner of a farm lying contiguous to the highway at the point of the accident. The highway, a short time before the accident, had been rebuilt and in changing the location in some respects the fences of the plaintiff had been relocated. The road engineers in making the change had marked the center of the gravel roadbed by putting down spikes covered with cloth, about one hundred feet apart. On the morning of the accident, which was a bright, sunshiny one in May, the plaintiff, in company with W. N. Byrd and Robert Trimble, was proceeding down the highway on the left side thereof in a southerly direction. They were walking abreast, the plaintiff nearest to the center of the road. The plaintiff was telling his companion that he thought too much of his land had been taken into the right-of-way, and in an effort to locate the markers, he went over to the center of the road and stooped down with his gaze upon the center of the road. While in this situation there was no car in sight. The road was perfectly straight north of and behind the plaintiff for a distance of 275 yards and was thirty feet in width, with an additional shoulder on the side. That the plaintiff was intent on locating the spikes in the center of the road and oblivious of the approach of defendant's car is clearly shown. It is admitted that the driver of the car and the three other occupants saw the plaintiff when they were 250 feet away, going in the same direction as plaintiff. The evidence of the plaintiff is that the car was running "pretty fast," the evidence of the defendants is that it was running at a speed between thirty and thirty-five miles an hour a few seconds before the impact. As the car approached the plaintiff it was within five feet of the center of the road. When the car was within forty feet of plaintiff, Robert Trimble, realizing that plaintiff was unaware of the proximity of the car said, "look out." The plaintiff looked around, jumped towards the right and ran five steps down the road when he was struck by defendant's car. It is admitted by Ernest Samples, the driver of the car, that he did not slacken his

speed as he approached the plaintiff; that without varia-
tion he drove the car within five feet of the center of the
road for the entire distance of 250 yards; that he did not
sound the horn; that no obstacles prevented him from
driving further to the right-hand side of the road. His
only excuse for the unfortunate result was that he thought
the men would hear the car and get out of the way. That
Ernest Samples relied solely on the plaintiff to avoid an
accident, and did nothing himself to prevent it, is con-
clusively shown by the testimony of Mr. Stephenson, the
attorney for the Commonwealth for Highland county. He
stated that he was called to the scene of the accident in a
very short time thereafter and had a conversation with
Ernest Samples. In response to the question, "Please tell
the jury as fully as you can recall what you said to Ernest
Samples and what explanation he gave you," he said:

"After we checked up the measurements, Samples was
with me following around and I said to him, 'I would like
to know how the accident happened. It is an important
thing and we want to get the facts, if you are willing to
do it.' He said that he would be glad to do anything he
could. I said, 'You saw these men in the road when you
came around the turn' and he said that he did but thought
they would get out of the way—they were walking along
the road and one of them looked like he was looking for
something in the road and when he came close to the turn
he was driving thirty or thirty-five miles an hour and he
could see the three men in the road standing there. I
said, 'Why didn't you slow up' and he said 'I thought the
men would hear me coming and get out of the way.' The
road was wide enough for all parties to have part of it
and I asked him 'Did you sound your horn' and he said
'I did not; I thought that they would hear me coming and
get out of the road but they did not.' I asked him where
he applied his brakes and he said 'Right along here' and
he showed me where he had done that."

That the plaintiff was in a state of panic when he re-
sponded to the warning to "look out" is clearly evinced

by the fact that he made an effort to outrun the death-dealing instrumentality which was bearing down upon him without warning.

It is well recognized that such a condition as sudden fright may exist.

In Blashfield Enc. of Auto. Law, (Perm. Ed.), vol. 2, section 1248, it is said: "Fright at the suddenly discovered approach of an automobile immediately near is something so natural and usual that one driving a vehicle should anticipate it and govern himself accordingly, where the circumstances indicate that one in the street may be taken unaware." See also, *Frankel* v. *Hudson,* 271 Mo. 495, 196 S. W. 1121; *Tatum* v. *Croswell,* 44 Ga. App. 853, 163 S. E. 228, and cases cited in opinion; *Smith* v. *Spirek,* 196 Iowa 1328, 195 N. W. 736.

 The contention is made by counsel for defendants that plaintiff was not in his proper position on the highway and therefore was guilty of contributory negligence. It is true that the statute (Acts 1932, ch. 342, section 79) states that a pedestrian in proceeding along the highway must keep to the left-hand side of the road, but there is no provision of the statute which inhibits a pedestrian from going to the center of the highway for a proper purpose, under proper conditions. The plaintiff had a perfect right to examine the highway in order to ascertain the location of the spikes which determined the boundaries of his land. That he exercised due care when he went to the center of the road is clearly shown; that no obvious danger existed at the time is likewise shown. It cannot be said, therefore, that plaintiff was guilty of contributory negligence as a matter of law. Whether or not the plaintiff was guilty of contributory negligence as a matter of fact has been concluded by the verdict of the jury.

The rule as to the operation of a locomotive is firmly established in this jurisdiction and imposes upon those in control certain duties. In *Southern R. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 370, 27 L. R. A. (N. S.) 379, Judge Keith said:

"If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track and there be super-added any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

It is self-evident, when we scan the daily reports of highway accidents, that a similar responsibility should rest upon operators of motor vehicles upon the highway. Under the facts and circumstances narrated, it was the imperative duty of the driver of the automobile to sound the horn. Had this been done at a proper distance from the plaintiff, it is inconceivable that the accident would have happened.

While the last clear chance doctrine is not involved in this case, the recent case of *Perkinson* v. *Persons,* 164 Va. 172, 178 S. E. 682, 684, is illustrative of the duty imposed upon the driver of an automobile under certain conditions. In that case the plaintiff was crossing a street between intersections which, under the law, was prohibited; the defendant had just passed another car and was on the left side of the street and the plaintiff was directly in its path; when the car was some fifty to seventy-five feet from the plaintiff she darted diagonally toward the west side of the street, and as she did so, the defendant turned his car in the same direction and struck her when she was nearly across. In the course of the opinion, Mr. Justice Gregory said:

"The testimony discloses that Perkinson could have seen Mrs. Persons standing in the street when she was still 150 feet, or more, away. The jury had the right to conclude that if he had seen her when he should have seen

her, he could have avoided running over her by using his brakes, which were in good condition, by reducing his speed, which he did not do until it was too late, or by seasonably turning back to his right side of the street after passing Mr. Foster's car. The jury could have reasonably concluded that he had a clear opportunity, in the exercise of ordinary care to have taken one, or all of those precautions, and, if he had, Mrs. Persons would have been saved, even though she were in a state of negligence in standing in and crossing the street. Whether Perkinson should have discovered her peril sooner than he did, and whether he had a clear chance to save her in the exercise of ordinary care were matters for the jury and by their verdict these things have been decided adversely to the plaintiff in error. Such a finding has substantial evidence to support it. Our conclusion is that the evidence in this case justified the instruction on the last clear chance doctrine."

The action of the trial court in refusing to set aside the verdict as being contrary to the law and the evidence is without error.

The remaining assignment of error relates to the action of the court in giving this instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiff being without negligence on his part was confronted by a sudden emergency caused by the negligence of the driver of the defendant's car and was compelled to act instantly to avoid being injured, he cannot be held guilty of negligence simply because he did not make the wisest choice in seeking to avoid danger."

From what has already been said it is apparent that we are of opinion that this assignment of error is without merit.

We find no error in the judgment and it is affirmed.

*Affirmed.*