BLACK & WHITE, INC. *v.* FISHER.

5-608                                                275 S. W. 2d 876

Opinion delivered February 28, 1955.

[Rehearing denied March 28, 1955.]

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Talley & Owen, Max Howell* and *Dale Price,* for appellee.

J. Seaborn Holt, J. Appellee, a Negro woman about 60 years of age, sued appellants to recover damages for personal injuries received when she was struck by a taxicab driven by appellant, Norris Davis.

Among the allegations of negligence in her complaint against appellants were: Failure to keep a lookout and that the cab was being driven at an excessive rate of speed and was not kept under proper control. Appellants answered with a general denial and affirmatively pleaded contributory negligence of appellee as a defense.

A jury trial resulted in a verdict for appellee in the amount of $13,500.00, and this appeal followed.

For reversal, appellants rely on two points: I. "Defendants were entitled to a judgment as a matter of law," and II. that "the trial court erred in refusing defendant's requested instruction D-12 concerning the test to be applied when a driver is confronted with an emergency."

## - I -

Appellee's injuries were serious and permanent. At about 5:55 A. M., November 25, 1953, she was walking north on the sidewalk on the east side of the Main Street Bridge over the Arkansas River at Little Rock. At a point of about 90 feet from the south end of the bridge, she attempted to cross from the east to the west side. There were four traffic lanes on the bridge, two for north bound traffic and two for south bound. Appellee had proceeded approximately across the first traffic lane for a distance of some 12 feet when she was struck by a Black & White cab, driven by Davis, and she was knocked about 15 feet. The cab was moving about 25 miles per hour. There were some 35 feet of skid marks from the cab wheels leading up to the point of impact with appellee.

Appellee testified: "Q. How did the accident happen, just tell us about the accident. A. Well, the accident happened, I remember crossing the street and a bus hit me and he didn't even have a light or nothing. * * * Q. Would you have any idea about how far you were from the edge of the bridge? * * * A. I reckon about 12 feet from the edge of the bridge. * * * A. I stepped off on the bridge. Q. Stepped off of the sidewalk on to the bridge? A. On the bridge, didn't even have no light. You know, if they had had a light I could have seen. There was no light or no whistle, didn't blow no whistle, either. Q. Did you see the taxicab before it hit you? A. Didn't see it. If I had seen it, I wouldn't even had both my legs broke, both of them was broke. Q. Did you hear the taxicab before the accident? A. I heard nothing. If I had heard, I would have got out of the way, I would have knowed it would break my leg. * * * A. About 5:30 in the morning or 6:00 o'clock. Q. Was it dark or was it daylight? A. It was dark, in the winter, it is dark, in the winter-time it is dark."

The cab driver, Davis, testified: "Q. Which side of the street did she come from, the east or the west? A. I didn't see her crossing the street. I couldn't say if she crossed the street or what direction she came from. * * * Q. You stated a while ago when you first saw Gertrude Fisher, she was out in the street, and you were some 50 feet from her. Had you been looking somewhere else? A. I could have, I don't remember whether I looked or not. Chuck (Corbett) started talking to me. Q. Did you turn around to talk to them? A. I could have. Q. Did you turn around? A. Right after I pulled from the stand, I did. Q. Were you talking to Johnny Lee or Mr. Corbett? A. To Mr. Corbett. * * * Q. You didn't see how the woman got out in the street? A. No, sir. All I know she got out there sudden, fast like. Q. You didn't see her? A. No, I couldn't swear I seen her get out there. Q. When did you first realize she was in a dangerous position? A. When I first hit my brakes, and I don't know how far from her. Q. Can you say whether she jumped or didn't jump? A. I couldn't say she jumped. * * * A. As he (Chuck) got in the cab, he

was talking, and when I pulled out I looked at the traffic, and he mentioned my name, and I turned around to see what he wanted—it is just a habit I have—I don't know whether I just glanced back there or what. I know I glanced back when he said something—it was just a habit. Q. Then you looked straight ahead? A. Yes, sir. Q. What did you see as you looked toward North Little Rock? A. It seemed like when I turned back I saw someone standing in front of me.''

After a careful consideration of all the evidence in the light most favorable to appellee, as we must do, and without attempting to detail more of it, we cannot say that there was no substantial evidence upon which the jury was warranted in basing its verdict under proper instructions, which the court gave. The question of appellants' negligence and the contributory negligence of appellee, in the circumstances, was for the jury's determination.

Relative rights and duties of pedestrians and drivers of motor vehicles on the streets and highways have been announced many times by this court.

''It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation, and in the exercise of such care, it is his duty to keep a constant lookout to avoid injury to others. This is particularly incumbent upon him when driving on the street of a city in order to avoid injury to pedestrians, as he should anticipate their presence upon such streets, and their equal right to their use.'' *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796.

''The relative rights of pedestrians and motor vehicles in a public street are equal, and each is obliged to act with due regard to the movements of the other. Neither is called upon to anticipate negligence of the other.'' *Oliphant* v. *Hamm,* 167 Ark. 167, 267 S. W. 563. See also, *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110, and *Yocum* v. *Holmes,* 222 Ark. 251, 258 S. W. 2d 535.

## - II -

We do not agree with appellants' contention that the cab driver, in the circumstances here, was confronted with an emergency and that the court erred in refusing their requested instruction on the test to be applied in an emergency. It is conceded, as appellants say, that "the plaintiff's (appellee's) case was submitted to the jury solely upon an alleged failure of appellant, Norris Davis, to keep a proper lookout as the sole and proximate cause of the accident."

In this case, there was evidence that appellee stepped from the sidewalk on to the bridge, walked a distance of about 12 feet before she was struck. She did not step suddenly from the sidewalk or curb into the path of the oncoming cab. The jury could well have found that had Davis been keeping a proper lookout, with his cab under control, as required of him, on a public street such as the one here, he might have stopped his cab and avoided striking and injuring appellee. "One cannot shield himself behind an emergency created by his own negligence," or making. (*Wells* v. *Shepard,* 135 Ark. 466, 205 S. W. 806.)

Finding no error, the judgment is affirmed.

Justice WARD dissents.