WILLIAMSON *v.* GARRIGUS.

5-1454                                                      310 S. W. 2d 8

Opinion delivered February 17, 1958.

*John G. Rye,* for appellant.

*Richard Mobley* and *Williams & Gardner,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Garrigus, brought this suit to recover damages for personal injuries which resulted when he was struck by an automobile driven by appellant, Williamson. Appellant denied any liability, alleging as a complete defense and bar, contributory negligence of appellee. By agreement a jury was waived and trial was had before the court, sitting as a jury, which resulted in a finding and judgment for appellee in the amount of $8,961.85. This appeal followed.

For reversal appellant contends that the evidence shows that he was free from any negligence, that appellee was guilty of contributory negligence barring any recovery, and that the verdict was excessive.

The testimony shows that appellee was walking diagonally across Main Street in Russellville between street intersections, or ''jaywalking'' as it is sometimes called, when he was struck by appellant's car. A fair summation of the facts we think, is contained in the following findings and conclusions of law of the trial court: ''. . . defendant (appellant) Williamson, in driving south on Arkansas Avenue, turned simultaneously with another car, not identified, being driven north from South Arkansas Avenue into Main Street. That according to defendant's (appellant's) testimony, the two cars traveling to the West, were at least at the point of the accident, almost abreast. Defendant (appellant) stated that his car was about half the distance

of the other car to the rear, and that about one yard separated the two cars, north and south. In response to question asked by his attorney, Mr. Williamson stated that his view to the left was obstructed. Other witnesses testified that just prior to the accident, the preceding car was about 10 or 15 feet in the front of the Williamson car. Based upon the testimony of the defendant (appellant), who was in a better position to observe the true physical conditions and location of the two cars, assuming there were two cars, than that of other witnesses who were a considerable distance away, defendant (appellant) from the point of turning from Arkansas Avenue into Main Street, traveled a considerable portion of distance, just behind the second car he testified to, or almost parallel with the car driven to his left. Accepting this testimony as true, defendant continued to drive with his view to the left obstructed and at the rate of speed he was driving, 20 to 25 miles an hour, did not have his car under such control as to be able to avoid the accident. * * * He (appellant) placed his car to the right of the car just preceding him, about a yard interval between the two cars . . . 'I would say that the front of my car was about even with the middle of his (second car).' Defendant (appellant) also stated in response to question by the court that plaintiff, Garrigus, stepped from in front of west bound car to his left in front of Williamson car . . . Mr. Garrigus was an old man, moved very slowly with a shuffling walk, and if the two cars were traveling parallel or partially parallel as described by defendant (appellant), without any decrease in speed of either car, to have moved into the lane traveled by defendant (appellant), plaintiff (appellee) would have (had) to jump or to say the least, moved rapidly from the front of the other car.

"Mr. Charles Wilson testified: 'I didn't see any cars until I saw this car down in front of the courthouse, the first I saw, and Uncle John (plaintiff-appellee) came out . . . it seems like . . . he walks kind like (indicating) and he was trying to get out of the way of the car, is the way it looked to me.' From

this testimony, as given, plaintiff (appellee) apparently saw the Williamson car and sought to avoid being struck. The 'other car' apparently was not seen by Mr. Wilson. The weight of the testimony, however, rather sustains the finding that there was a second car.

"Viewed from the whole of the testimony heard in the trial, it is the finding of the court that defendant was guilty of negligence in the manner of the operation of his automobile immediately prior to and at the scene of the accident. In examining the testimony of defendant (appellant), which has been transcribed for the benefit of the court, in no particular does he testify that he was keeping a constant lookout as required by law. It may be assumed of course that defendant was looking ahead, but apparently not laterally. While defendant (appellant) testified that he was not exceeding the speed limit, it would not necessarily follow that under the existing conditions he was justified in driving at the legal rate of speed. Cars were parked on the north side of Main Street. Sufficient room remained north of the center line to permit two lanes of travel, but the right portion of the street would be limited and would require careful, prudent driving. Motorist, under the existing conditions attendant on one of the main traveled streets would be required to anticipate the presence of pedestrians, and this would require a constant, continuous lookout." It appears that due to loss of memory, appellee was unable to testify in this case.

The relative duties of the pedestrian and motorist, in circumstances such as are presented here, have many times been announced by this court, both have equal rights in the use of streets and highways. Motorist, in operating automobiles, must keep a constant lookout to avoid injury to pedestrians, see *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796; and, must anticipate the presence of pedestrians on streets and exercise reasonable care to avoid injuring them, see *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110; *Self* v. *Kirkpatrick,* 194 Ark. 1014, 110 S. W. 2d 13; *Pate* v. *Fears,* 223 Ark. 365, 265 S. W. 2d 954; *Black & White, Inc.* v. *Fisher,* 224

Ark. 688, 275 S. W. 2d 876. Pedestrians are required to exercise ordinary care for their own safety. As to the duties and care required of a pedestrian in crossing a street, *Blashfield Vol. 2A, Sec.* 1452, states the rule as follows: "A pedestrian has a right to cross a street diagonally in the middle of the block, or elsewhere than at a crossing, subject to the duty of making reasonable use of his senses in order to observe impending danger, though he may rely to some extent on the motorist exercising reasonable care, and whether he is in the exercise of ordinary care in so doing is usually for the jury . . . A pedestrian so crossing the street is under no duty to anticipate any action on the part of the motorist that will imperil his safety . . . or that the car is not being run at a controllable speed. In such situations, as in other cases, the right of the pedestrian to assume that the motorist will not violate traffic regulations may affect the question of his negligence.

"A person, crossing a street in a diagonal direction, at a place where there is no crosswalk, is not negligent as a matter of law in failing to look continually for automobiles approaching from behind, as there is no fixed rule that he must turn and look back, but whether he does so depends on the circumstances in the particular case, and, while he must be alert, where he should look depends upon the law of the road, the current or traffic, his means of observation and local conditions."

In Am. Jur. Prud. Sec. 762 of Vol. 5A, the textwriter says: "Where a pedestrian is forbidden by law to cross a street or highway between intersections it is generally held that the mere violation of the statute or ordinance will not necessarily operate as a bar to recovery. Such question as the proximate cause of the accident . . . . may make the issue one of fact for the jury to decide in light of all surrounding circumstances."

In a very recent case, *Pate* v. *Fears*, 223 Ark. 365, 265 S. W. 2d 954, we have set forth and defined the relative rights and duties of pedestrians and motorists in circumstances such as are presented here, where we

said: "There are many decisions of this court defining the relative rights and duties of pedestrians and drivers of automobiles using the public streets and highways. Both have a right to use the streets and are required to exercise ordinary care for their own safety and the prevention of injury to others . . . this court said in *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796, 'It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation, and in the exercise of such care it is his duty to keep a constant lookout to avoid injury to others. This is particularly incumbent upon him when driving on the street of a city in order to avoid injury to pedestrians, as he should anticipate their presence upon such streets and their equal right to their use.' In *Morel* v. *Lee,* 182 Ark. 985, 33 S. W. 2d 1110, the court said, 'Ordinary care, however, is a relative term, its interpretation depending upon the facts and circumstances of each particular case; and, although drivers of automobiles and pedestrians both have the right to use the streets, the former must anticipate the presence of the latter and exercise reasonable care to avoid injuring them, care commensurate with the danger reasonably to be anticipated'." In the case of *Black and White, Inc.* v. *Fisher,* 224 Ark. 688, 275 S. W. 2d 876, we said: "The relative rights of pedestrians and motor vehicles in a public street are equal, and each is obliged to act with due regards to the other. Neither is called upon to anticipate negligence of the other." As indicated, we think there was substantial evidence presented, when considered in the light most favorable to appellee, as we must, to support the findings of the trial court to the effect that the proximate cause of the collision and injuries to appellee was due to the negligence of appellant, and not to appellee's negligence.

On the question of excessiveness of the verdict, little need be said. Of the amount of damages allowed appellee ($8,961.85) it appears that $1,961.85 was for medical care, hospitals, nursing, drugs, etc., $2,000 was for loss of earnings and $5,000 was for the permanent injury, pain suffered and mental anguish. It was un-

disputed that the life expectancy of appellee was five years. At the time of the injury he was 84 years of age and receiving $105 per month, $50 of this amount was retirement pay paid by the city and $55 paid to him as night watchman by the merchants of Russellville. It appears undisputed that appellee was seriously injured in June 1953. Medical testimony shows that his injuries were painful and permanent. He suffered a fractured leg, a broken arm, abrasions and other bodily injuries. He was confined to a hospital about 2½ months and at his home in bed for 5½ months thereafter. His physician testified that he would continue to suffer in the future and that his injuries were permanent. In cases of this nature we are afforded no definite yardstick by which to measure damages and the amount awarded must, therefore, be left to the sound discretion and judgment of the jury, or the court sitting as a jury, based upon the evidence in the case. The amount so awarded cannot be disturbed by this court as excessive if we find any substantial evidence to support it. We reannounced the rule on measure of damages in *Hot Springs Street Railway Co.* v. *Hill,* 198 Ark. 319, 128 S. W. 2d 369: "The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are insusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury, the exercise of which must be governed by the circumstances and be based on the evidence adduced, the

controlling principle being that of securing to plaintiff a reasonable compensation for the injury which he has sustained.'' When we consider appellee's reduced earning capacity, his permanent injuries with attendant pain and suffering, we do not find the verdict excessive. It is also significant to note that at the time of the trial in June 1957 appellee had already lived 4½ years after his injuries, or about six months short of his life expectancy.

Affirmed.