Henry Elmer ROBERTS, Plaintiff in Error,

v.

Billy Gene CAIN, Defendant in Error.

No. 39144.

Supreme Court of Oklahoma.

Oct. 3, 1961.

Rehearing Denied Oct. 31, 1961.

1015

Charles M. Wilson, Sayre, for plaintiff in error.

Wise & Ivester, Sayre, for defendant in error.

BERRY, Justice.

The parties who appear here in reverse order to their appearance in the trial court, will be referred to herein as they appeared in said court.

In the petition filed below, plaintiff alleged that while walking across State Highway No. 44 at a point approximately 2½ miles south of Burns Flat, Oklahoma, he was struck by an automobile operated by defendant; that as a result of being so struck, he sustained serious and permanent bodily injuries; that the injuries so sustained were directly and proximately caused by defendant operating his automobile in a negligent and careless manner. The alleged negligent acts of defendant were stated in detail in the petition. Plaintiff sought to recover $77,000 as damages.

In his answer defendant denied generally the allegations of plaintiff's petition. He, however, admitted that the accident occurred at the time and place alleged in plaintiff's petition. As an affirmative defense, defendant pleaded that the proximate cause of the accident was plaintiff's contributory negligence and that the "accident occurred as the result of an unavoidable inevitable misfortune and casualty".

The case was tried to a jury. The jury returned a verdict in plaintiff's favor for $6,415.30 and judgment was entered against defendant in said amount. From order of the trial court denying defendant's motion for new trial which was directed to said judgment, defendant perfected this appeal.

The uncontradicted evidence shows that at approximately 1 p. m. plaintiff was driving his automobile in a northerly direction over State Highway No. 44 at a point approximately 2½ miles south of Burns Flat; that he observed a station wagon parked near said point to the west of the paved roadway; that the station wagon was headed south; that plaintiff (according to his testimony) stopped his automobile off the roadway opposite the parked station wagon; that he got out of his automobile and walked across the roadway in order to offer the three occupants of the station wagon assistance; that the hood of the station wagon was up and one of the occupants was working with the carburetor on same; that shortly after he approached the station wagon the motor thereto was started; that he started back across the roadway; that he was struck by the right front portion of defendant's automobile which was traveling south; that the weather was clear and the paving was dry; that there were no obstructions that prevented plaintiff from seeing defendant's approaching automobile and none to obstruct defendant's view of plaintiff as he stood near the station wagon or as he walked to the east across the roadway in order to return to his parked vehicle.

Plaintiff testified that upon reaching the station wagon, he assumed a position in front of the radiator of same; that in leaving said position in order to walk to his parked automobile, he looked first to the north and then to the south and saw no vehicles approaching; that after he had taken "about four steps" and was near the center of the roadway he heard an occupant of the station wagon shout a warning; that he looked to the south and saw no approaching vehicle; that he then "heard the brakes" to an automobile approaching from the north but was struck before he had time to look to the north; that he did not hear the sound of an automobile horn prior to being struck.

Defendant testified that he was driving approximately 50 miles per hour as he approached the point where his automobile struck plaintiff; that when he topped a hill approximately 700 to 800 feet north of the parked vehicles he saw said vehicles; that at said point he stopped accelerating his automobile; that when his automobile was some 50 feet north of the parked vehicles he saw plaintiff standing near the left front door of the station wagon talking to the driver; that plaintiff turned to his left

(plaintiff testified that he turned to his right) and walked east across the roadway without looking to the north; that upon plaintiff's starting to leave the station wagon "I hit my brakes with my feet and blew my horn with my elbow"; that he was approximately 15 feet from plaintiff when he applied the brakes; that upon applying the brakes, his automobile slowed down; that he "cut it a little to the left"; that he drove as far to the left or east side of the highway as he could without colliding with plaintiff's parked automobile; that the right front end of defendant's automobile struck plaintiff; that the right side of his automobile was east of the center line of the roadway when the accident occurred.

The testimony of defendant to the effect that plaintiff did not look to the north upon leaving the station wagon; that he applied the brakes to his automobile and that he also sounded the horn to same prior to the automobile striking plaintiff is corroborated by witnesses who were passengers in his automobile.

The defendant contends that there is no competent evidence tending to show acts of negligence on his part that can be said to have been the proximate cause of the accident; that for said reason the trial court erred in not sustaining his motion for a directed verdict. We are unable to agree.

■ In Vol. 2A "Blashfield, Cyc. of Automobile Law and Practice", Sec. 1451, p. 327, it is stated that "In the absence of statute or ordinance regulating the matter, pedestrians are entitled to free and unobstructed passage across a street at any and all places, without being confined to particular crossings." As reflected by the provisions of 47 O.S.Supp.1953, Secs. 125.13 and 125.14, the Legislature chose to enact legislation relative to the privilege of pedestrians crossing a roadway at a point other than a marked crosswalk or at unmarked crosswalk at an intersection. The applicable portion of the first cited section reads as follows:

"(a) Every pedestrian crossing a roadway at any point other than within

a marked crosswalk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

The last cited statute reads thus:

"Notwithstanding the foregoing provisions of this article, every driver or operator of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

■ It is made clear in the cited statutes that notwithstanding the driver of a vehicle has, with the exceptions noted in Sec. 125.13, the right-of-way over a pedestrian crossing a roadway, the driver who has the right-of-way is nevertheless under a duty to exercise due care to avoid colliding with the pedestrian and, where necessary, shall give warning to the pedestrian by sounding the horn of his vehicle. In our opinion the matter of whether the trial court erred in denying defendant's motion for a directed verdict turns upon the proposition of whether there is competent evidence tending to show that defendant violated Sec. 125.14 and whether the jury was justified in finding that said violation was the proximate cause of the accident and resulting injuries.

As heretofore pointed out, there was competent evidence that defendant had a clear and unobstructed view of the parked vehicles from the time he reached a point 700 to 800 feet north of same; that plaintiff was standing to the east of the station wagon and was therefore clearly visible; that notwithstanding defendant could and should have seen plaintiff, he did not see plaintiff until his automobile was approximately 50 feet north of plaintiff; that defendant (according to plaintiff's testimony) at no time sounded the horn to his automobile; that the horn (according to defendant's testimony) was not sounded until defendant's vehicle was 50 feet from plaintiff.

■ It was the jury's privilege to believe that the horn to defendant's automobile was not sounded and to conclude that said failure, together with defendant's admission that he did not see plaintiff until his automobile was 50 feet from plaintiff, showed negligence and a violation of Sec. 125.14 that was the proximate cause of the accident. For that matter, if the jury had believed defendant's testimony that he sounded the horn before his automobile struck plaintiff, the jury, in our opinion, would nevertheless have been justified in concluding that defendant should have seen plaintiff long before he testified that he saw him and should have sounded the horn before it was sounded; that for said reason, defendant was negligent and that his negligence was the proximate cause of the accident.

■ The decision of the Supreme Court of Iowa in Nichols v. Snyder et al., 247 Iowa 1302, 78 N.W.2d 836, 839, shows that Iowa has a statute analogous to Sec. 125.14, supra. After referring to the Iowa statute, said court pointed out that it is stated in 60 C.J.S. Motor Vehicles § 288, pp. 674, 675 and 677 and § 284, pp. 667 and 668 that "In the absence of statutory or other governmental regulation imposing a mandatory duty to do so, the duty to blow a horn or give other warning signal of the approach of a motor vehicle depends largely on the circumstances * * *. It is the duty of the driver to give warning of the approach of the vehicle when this is *reasonably necessary* to avoid danger or injury to others by according them an opportunity to take measures for their own protection * * *." (Emphasis supplied) ; that "Failure to see the person injured in time to sound a warning signal has been held not to relieve the driver of the consequences of negligence in failing to give a signal as required by statute"; that "It is his (the motorist's) duty, unless some reasonable excuse or explanation for not seeing is shown, to see what is in plain view or obviously apparent, or the things which a person in the exercise of due care and caution would see under like or similar circumstances, and to

be cognizant of them and utilize the information obtained to prevent injury to himself and others." After quoting said matter, the court says that "Such, we think, are the occasions when under our statute the sounding of a horn or warning is 'reasonably necessary.' "

We are of the conviction that the line of reasoning advanced and the conclusion reached in the cited case are sound. We are, therefore, of the opinion that there was competent evidence showing that defendant was negligent and that his negligence was the proximate cause of the accident and plaintiff's resulting injuries.

■ Defendant stresses evidence to the effect that plaintiff looked neither to his right nor to his left as he walked from the station wagon; that immediately following the accident he admitted to several that he didn't keep a lookout and that the accident was his fault. As heretofore pointed out, plaintiff testified that he looked in both directions before he started to re-cross the roadway. It was the jury's privilege to believe or disbelieve any competent evidence that was introduced. As pointed out in numerous decisions of this Court, the matter of whether a plaintiff is guilty of contributory negligence is a question of fact for the jury and when the jury resolves said question favorably to the plaintiff, we are not at liberty to disturb said finding. See Art. 23, Sec. 6, Okla.Const.; Wilson et al. v. Shawnee Milling Co., Okl., 292 P.2d 147, 148 and cited cases. The fourth paragraph of the syllabus to the last cited case reads as follows:

"When there is evidence to disclose primary negligence of the defendant which could be the cause of damage to the plaintiff, and the defense is contributory negligence, such defense presents a question of fact to be left to the determination of a jury."

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.