## Thomas P. McKIM *v.* NORTHWESTERN NATIONAL CASUALTY CO.

73-233                                      505 S.W. 2d 756

### Opinion delivered March 4, 1974

*James C. Cole*, for appellant.

*Laser, Sharp, Haley, Young & Boswell, P.A.*, for appellee.

LYLE BROWN, Justice. Appellant Thomas P. McKim instituted this suit against appellee insurance company on appellant's automobile policy, alleging negligence on the part of Larry Jester, an uninsured motorist. At the close of appellant's presentation of evidence, the trial court granted appellee's motion for a directed verdict. Appellant here contends his evidence was sufficient to make a jury question on the issue of liability.

No eyewitnesses to the accident testified. Officer Linden Davis was on the scene within a short time and gave a detailed description of what he found. Rex Franklin, a friend of appellant, inspected the premises a few days after the accident, and later testified. Appellant testified but was unable to recount the accident because since since the accident he had

been suffering from retrograde amnesia. That condition resulted from a serious injury to his head in the accident. We proceed to give a fair summary of the accident as reconstructed by appellant's witnesses.

The accident occurred at about 9:30 p.m. on November 30, 1970; the weather was clear and dry. Larry Jester was driving south on Garland Street in the city of Malvern. Almost in the center of the block is a car wash. The street and the car wash lot were paved with asphalt. There were no sidewalks or traffic markings. Appellant, a pedestrian, was either crossing or had crossed Garland Street in front of the car wash. He was apparently walking in a northwesterly direction, headed for a small industry where his wife worked on the night shift. He was going there to get his wife's car to transport a pistol, which he had borrowed, to its owner, Rex Franklin.

There was a street light at each end of the block and the point of impact in front of the car wash was dark. The investigating officer had to use a flashlight and a car spotlight to investigate the accident. The car wash was closed and no lights were on. Appellant was wearing a dark jacket and dark trousers, described as "olive drab" color. A set of keys belonging to appellant was found in Jester's lane of traffic, some six feet on the other side of the imaginary curb line between the street and the car wash. Appellant's body was found on the car wash side of the curb line, being some 5' 10" over on the car wash property. The body was located almost in line with the car keys but just a few feet to the south of that line. Jester's car was stopped in his lane of traffic some seventy-five feet south of the car keys. There was a dent on the bumper and on the right part of the hood. The officer found the brakes and lights to be in good working order. There were no skid marks. The officer took a statement from the driver, Jester, but it was not introduced.

On the corner of the block just north of the car wash is a Tastee Freeze and it was lighted that night. Cars are in the habit of circling the Tastee Freeze and then coming south on Garland Street. Whether Jester made such a circling movement, or whether he was proceeding down Garland street in

the usual manner, is now shown. by the record. The keys were found 130 feet south of the nearest corner of the Tastee Freeze.

Another object found at the scene of the accident was the pistol appellant was carrying. It was found in somewhat of an even north and south line from appellant's body and towards where Jester's car stopped. The pistol bore fresh scar marks.

Appellant said the last thing he remembered was "when I got in from work that afternoon". The next thing he remembered was about eight days later when he found himself in the hospital. The trousers he was wearing at the time of the accident were introduced; they had a hole in them and a tear across the right hip. The shoes he was wearing were scuffed and the jacket was torn. With respect to his walking in the street he said: "I was trained in the military about when walking down a highway or street, where there is no sidewalk, to walk facing traffic on the left side of the street. I formed a habit of doing that".

We have searched for substantial evidence of negligence on the part of the driver, viewing the same in the light most favorable to plaintiff-appellant. We have also taken cognizance of the rule that "a well-connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, . . . and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions". *Woodward* v. *Blythe*, 246 Ark 791, 439 S.W. 2d 919 (1969). Nevertheless, we have no hesitancy in concluding that at most, appellant's evidence would do nothing more than afford the jury a choice of possibilities. When the evidence presents no more than such choice we have said that it is not substantial. *Kapp* v. *Sullivan Chevrolet Co.*, 234 Ark. 395, 353 S.W. 2d 5 (1962). In the case at bar the appellant alleged: (a) failure to keep lookout, (b) inadequate warning, (c) excessive speed, (d) lack of required control, and (e) inadequate headlights. Applying the facts and circumstances established, we are simply unable to say that either of the allegations is supported by substantial evidence. Possibility of proximate cause is not enough; a

reasonable probability must be shown by substantial evidence. *Davis* v. *Kemp*, 252 Ark. 925, 481 S.W. 2d 712 (1972).

Affirmed.