Dean THOMAS, Sp. Adm. *v.*
Thomas Clayton NEWMAN

76-284                                              553 S.W. 2d 459

Opinion delivered July 11, 1977
(Division II)

44

*James C. Cole,* for appellant.

*Barber, McCaskill, Amsler & Jones,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Dean Thomas, father of Bradley Thomas, deceased, is Special Administrator of his son's estate and, as such, he was the plaintiff in a wrongful death action against appellee Thomas Newman. This appeal is from a judgment on a directed verdict in favor of Newman in that suit. The sole point for reversal is the propriety of that verdict. We find error in that action and reverse.

In reviewing the trial court's action, we must view the evidence in the light most favorable to appellant, drawing all reasonable inferences favorably to him. *Wheeless* v. *Eudora Bank,* 256 Ark. 644, 509 S.W. 2d 532; *Little Rock Land Company* v. *Raper,* 245 Ark. 641, 433 S.W. 2d 836. In stating the evidence, as we see it, we will do that.

Bradley, or Brad, as he was known, was 13 years of age on April 5, 1975, when he died as a result of being struck by an automobile driven by Newman on State Highway 7 south of Bismarck. Brad had accompanied his father and uncle, J. L. Thomas, on a trip to Reuben Hardin's farm to cut firewood. His younger sister and a cousin also went along. The journey was made in a pickup truck owned and driven by J. L. Thomas. Brad rode in the bed of the truck along with his little sister. His brother Kelly and cousin Dennis rode in the cab with the two adults. When the party arrived at the Hardin farm along Highway 7, at about 12:30 p.m., J. L. Thomas turned the truck off the highway and stopped at a gate, which was an entrance to the farm. Brad's father got out of the truck and went to open the gate. Brad told his cousin Bill that he knew where they could find some bottles. In spite of being told by his uncle not to leave the truck, Brad was observed on the opposite side of the highway near a highway sign on its shoulder by his father, who looked in that direction as he was about to close the gate after the truck had been

driven through it. The father called to the lad to return to the truck, and then turned his attention to the gate. The father had not seen any automobiles on the highway in either direction when he called to his son, but almost immediately he heard brakes squealing and a "bump," and turned and saw Brad "still at the car." He said the car threw Brad "in the air" down the pavement. He ran to the boy, picked him up from the southbound traffic lane (in which Newman had been traveling), and, with the help of J. L. Thomas, put him in the back of the truck and took him to the hospital. Brad died within a few hours.

Brad was 5'6" or 7" tall and weighed 110 to 120 pounds. When seen by his father, he was on a 7 ½-foot shoulder of the highway. Newman, in approaching the place where Brad was, had clear visibility of the highway, its shoulder and the sign warning of a curve, for quite a distance on a straight stretch of an otherwise crooked highway. He admitted that he had seen the boy standing on the shoulder of the highway as he approached the point where his car had struck the lad. He could have seen all but the lower three feet of the boy's body from a distance as great as 578 feet, although his full body may not have been visible for more than 330 feet. It was a clear day and the sun was shining.

J. L. Thomas did not hear the sound of a horn at any time. Nor did he hear the sounds characteristic of the braking of an automobile to check its speed prior to hearing the "squealing," which probably was caused by skidding of the vehicle's tires on the pavement. The right-hand skid marks were less than three feet from the edge of the 22-foot wide pavement. The right rear tire skidded 89 feet, only 52 of which were in a straight line, and about 25 feet north of the sign. The left rear tire skidded only 83 feet, and it appears that this wheel started skidding earlier than the right rear wheel. Both front tires skidded 60 feet, on a line curving toward the driver's left at which point the front of the vehicle appears to have left the pavement on the left-hand side. The rear of the vehicle may not have left the highway at all. The front wheel skid marks probably did not commence until the front of the vehicle was opposite the highway sign. A fair inference could be drawn that no diversionary action was

taken by the driver of the Newman vehicle until its front had passed beyond the highway sign. Blood spots about three feet apart were found in the southbound lane between 3-1/3 and 4 feet from the center line of the pavement. Marks on the vehicle indicate that the lad was struck by the part of the vehicle near its right front headlight.

The circuit judge granted the motion for a directed verdict on the theory that the evidence on behalf of the plaintiff could only leave the jury to speculation as to the events that led up to the occurrence. Viewing the evidence as we do and considering that no evidence had been offered to overcome any permissible inferences, favorable to appellant, that might be drawn from the testimony, we disagree.

In considering the propriety of this action at the conclusion of the evidence, we give the testimony its highest probative value. *Ellsworth Brothers Truck Lines* v. *Mayes,* 246 Ark. 441, 438 S.W. 2d 724. There is no question about the existence of evidence which would justify a jury, at least in the absence of other evidence, in finding that Newman was guilty of negligence. The allegations of negligence in the complaint were failure to keep a proper lookout, to exercise ordinary care in anticipating the acts of a 13-year-old child-pedestrian along the highway, to keep the vehicle under such control as to be able to check its speed or stop it when it became necessary to avoid colliding with the pedestrian and failure to exercise ordinary care after discovering the child-pedestrian in a position of danger. We think there was evidence from which the jury might well have found that Newman failed to keep a proper lookout, to exercise proper control of his vehicle, and to exercise ordinary care to avoid injury to Brad Thomas. There was also evidence from which a jury might infer that the Newman vehicle was being driven at an excessive speed.

It is well recognized that pedestrians and motorists have equal rights to use the public highways and each must act with regard to the presence of the other. *Bennett* v. *Staten,* 229 Ark. 47, 313 S.W. 2d 232, *Williamson* v. *Garrigus,* 228 Ark. 705, 310 S.W. 2d 8; *Haralson* v. *Jones Truck Lines,* 223 Ark. 813, 270 S.W. 2d 892, 48 ALR 2d 248; *Brotherton* v. *Walden,*

204 Ark. 92, 161 S.W. 2d 391. A motorist must keep a constant lookout to avoid injury to pedestrians, and should anticipate their presence. *Williamson v. Garrigus,* supra; *Lion Oil Refining Co. v. Smith,* 199 Ark. 397, 133 S.W. 2d 895. The care exercised must be commensurate with the danger reasonably to be anticipated. *Brotherton v. Walden,* supra; *Lion Oil Refining Co. v. Smith,* supra. A person operating an automobile and seeing children ahead must exercise such care as a man of ordinary prudence would exercise under the circumstances, i.e., care commensurate with the danger to be anticipated. *Self v. Kirkpatrick,* 194 Ark. 1014, 110 S.W. 2d 13.

In viewing the evidence in the light we must and in considering the law applicable, we will consider Brad as a child. We have not established definitive rules for determining whether an injured party is a child in a negligence case. Appellee contends that a 13-year-old youth is not a child for the purpose of measuring appellee's action against reasonable care standards. But we have held that AMI, Civil, 605 should have been given when a minor between 14 and 15 years of age was involved. *Holcomb v. Gilbraith,* 257 Ark. 32, 513 S.W. 2d 796.

The failure of the driver to sound his horn, or to take earlier diversionary action, or to sooner apply his brakes are significant on the question of speed, control and lookout. See *Breashears v. Arnett,* 144 Ark. 196, 222 S.W. 28. Ark. Stat. Ann. §§ 75-725 (a) (Supp. 1975) and 75-628 (a) and (d) (Repl. 1957)[1] are pertinent on these questions and on the question

[1]75-725. Horns and warning devices — Flashing lights on emergency vehicles. — (a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn but shall not otherwise use such horn when upon a highway.

75-628. Pedestrians crossing at other than crosswalks — Drivers to use due care. — (a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

(d) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give proper warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or confused or incapacitated person upon a roadway.

whether appellant, having the opportunity to see the 13-year-old boy along the highway, used reasonable care commensurate with a danger reasonably to be anticipated. See *Oliphant* v. *Hamm*, 167 Ark. 167, 267 S.W. 563. A 13-year-old boy is not an adult and it has been said that it is universally recognized that he has not reached a state of physical and mental maturity sufficient to warrant the belief that he is no longer apt to be daring, thoughtless and reckless. *Thompson* v. *Anderman*, 59 N.M. 400, 285 P. 2d 507 (1955); *Paschka* v. *Carsten*, 231 Iowa 1185, 3 N.W. 2d 542 (1942). See also, *Fightmaster* v. *Mode*, 31 Ohio App. 273, 167 N.E. 407 (1928).

Brad obviously came upon the roadway before he was struck. It appears that he was not at any time very far from that portion of the highway ordinarily used for vehicular traffic. Newman saw him on the shoulder. A pedestrian, insofar as § 75-628 (d) is concerned, is any person afoot. Ark. Stat. Ann. § 75-409 (b) (Repl. 1957). The duty of a motorist to sound his horn when approaching one on foot along a highway is not wholly dependent upon the statute.

The failure of a driver to give a pedestrian on or near a highway a warning signal is a circumstance to be considered in deciding whether the driver operated his vehicle with reasonable care in the circumstances presented him. *Graff* v. *Louis Stern Sons, Inc.*, 103 NJL 13, 135 A. 335 (1926); *Nunnelley's Adm'r.* v. *Muth*, 195 Ky. 352, 242 S.W. 622, 27 ALR 910 (1922). Even in the absence of any statute, a duty to sound a signal of his approach rests on the operator of an automobile approaching a pedestrian who is in danger of being struck unless warned, particularly if it appears that the pedestrian is oblivious of the approach of the automobile. *Izor* v. *Brigham*, 111 Vt. 438, 17 A. 2d 236 (1941); *Healy* v. *Moore*, 108 Vt. 324, 187 A. 679 (1936); *Roberts* v. *Cain*, 365 P. 2d 1014 (Okla., 1961); *Samples* v. *Trimble*, 165 Va. 306, 182 S.E. 247 (1935); *Wright* v. *Kidwell*, 14 S.W. 2d 499 (Mo. App., 1929); *Pryor's Adm'r.* v. *Otter*, 268 Ky. 602, 105 S.W. 2d 564 (1937); *Cervillo* v. *Manhattan Oil Co.*, 226 Mo. App. 1090, 49 S.W. 2d 183 (1932). Whether the signal to pedestrians is required in the exercise of reasonable care in the circumstances is usually a question for the jury. *Halbert* v. *Lange*, 313 Ky. 648, 233 S.W. 2d 278 (1950); *Healy* v. *Moore*, supra; *Birch* v. *Strout*, 303

Mass. 28, 20 N.E. 2d 429 (1939); *Wright* v. *Kidwell,* supra; *Collett's Guardian* v. *Standard Oil Co.,* 186 Ky. 142, 216 S.W. 356 (1919).

In considering the failure of a motorist to blow his horn when he sees a child on the roadside, the rules which would be applicable if the child were of mature age and judgment are not necessarily applicable to him, and if the sounding of the horn might have prevented a collision between the vehicle and the child, the question of proximate cause is for the jury. *Wickman* v. *Lundy,* 120 Wash. 69, 206 P. 842 (1922); *Nunnelley's Adm'r.* v. *Muth,* supra; *Gillis* v. *Singer,* 86 S.W. 2d 352 (Mo. App., 1935). It must be remembered that the sounding of the horn is designed, not only to warn of the approach of the automobile, but to give warning of the danger arising therefrom. *Gillis* v. *Singer,* supra.

Appellee's argument that the statute requiring the sounding of an automobile horn when children are on the roadway should not be considered because there was nothing to indicate that the driver knew that conditions requiring use of the horn prevailed. This argument overlooks the fact that Brad should have been visible to appellee for a distance of 578 feet and that one keeping a proper lookout should have known that he was on the shoulder of the road and certainly must have seen him leave the shoulder before he was struck. It also ignores the fact that appellant puts greater reliance on Ark. Stat. Ann. § 75-725 (Supp. 1975), which requires the driver to give an audible signal with his horn when reasonably necessary to insure safe operation.

It has been held that a statutory requirement such as § 75-725 (a), that an automobile be equipped with a horn, implies that it should be used when necessary for the safety of pedestrians. *Vannett* v. *Cole,* 41 N.D. 260, 170 N.W. 663 (1919); *Roberts* v. *Cain,* 365 P. 2d 1014 (Okla., 1969). The phrase "to insure safe operation" in the statute has been held to mean operation of the motor vehicle in such manner as, in all reasonable probability, it will not injure the motorist, those riding with him, or persons, or property rightfully on or using the highway; and the words "reasonably necessary" call for the same conduct as a reasonably prudent person

would use under the same circumstances; therefore, failure to sound a horn would be negligence if such a person would do so. *Lawson* v. *Fordyce,* 234 Iowa 632, 12 N.W. 2d 301 (1943). See also, *Roberts* v. *Cain,* supra. We take this to be a proper construction of Ark. Stat. Ann. § 75-725 (a).

Appellee also argues that § 75-628 (a) requires a pedestrain, crossing a highway at a point other than a marked cross-walk, to yield the right-of-way to an approaching vehicle. This is probably correct, but violation of that section does not relieve the driver of an approaching vehicle of the obligation to exercise ordinary care to avoid colliding with the pedestrian and to give warning by the sounding of a horn, when necessary. *Roberts* v. *Cain,* supra.

Appellant argues that there was no evidence that he was exceeding the speed limit of 55 miles per hour, and this is probably correct. But this is not all that is required of drivers in the exercise of ordinary care. Speed of a vehicle is regulated by Ark. Stat. Ann. § 75-601 (a) and (d) (Supp. 1975), reading as follows:

> (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

> (d) The driver of every vehicle shall, consistent with the requirements of paragraph (a) drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

A driver is bound to be constantly vigilant for persons along a

highway and exercise reasonable care to avoid injuring them. *Williamson* v. *Garrigus,* 228 Ark. 705, 310 S.W. 2d 8; *Loda* v. *Raines,* 193 Ark. 513, 100 S.W. 2d 973; *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S.W. 2d 796. Whether the speed at which the Newman vehicle was proceeding at the time under the circumstances shown by plaintiff's evidence was reasonable and prudent was a question for the jury. See *Lebkicher* v. *Crosby,* 123 Cal. App. 2d 631, 267 P. 2d 361 (1954). Perhaps a jury might find that appellee should have checked his speed when approaching a 13-year-old boy near the edge of the main traveled portion of the highway. The increased vigilance required of a motorist when he knows or should know that a child is likely to come into his course of travel does not mean that he is required to exercise a degree of care higher than reasonable care under the circumstances, but it does mean that he must exert greater effort in respect to lookout, speed management and control to fulfill his duty to exercise reasonable care. *Binsfeld* v. *Curran,* 22 Wis. 2d 610, 126 N.W. 2d 509 (1964).

The burden of proof on the element of causation was on appellant and he was required to produce proof beyond mere speculation and conjecture, but he was not required to entirely negate the possibility that appellee's conduct was not a cause. It was not required that appellant eliminate every possible cause other than the one on which he relied; it was only required that the proof eliminate such other causes as fairly arise from the evidence. *Hill* v. *Maxwell,* 247 Ark. 811, 448 S.W. 2d 9. He was not required to eliminate the possibility that Brad's negligence caused or contributed to his injury and death, and the physical facts are not sufficient to show that Brad, a child, was negligent, as a matter of law; or, if so, that he was as negligent as appellant.

There was no burden on appellant to show that his decedent was free from negligence. The party injured is presumed to be free from negligence until the contrary is made to appear, when, as here, res ipsa loquitor is not invoked. *Little Rock & Ft. Smith Ry. Co.* v. *Eubanks,* 48 Ark. 460, 3 S.W. 808, 3 Am. St. Rep. 245; *Little Rock & Ft. Smith Ry. Co.* v. *Atkins,* 46 Ark. 423. See 11 Blashfield, Automobile Law and Practice 96, § 417.2 (Revised Third Ed.).

The presumption in the absence of evidence to the contrary is particularly applicable when the injured party dies as a result of his injuries, at least where the question is whether a verdict should be directed. *Orbach* v. *Zern,* 138 Cal. App. 2d 178, 291 P. 2d 120 (1955); *Eaton* v. *Hewitt,* 171 Wash. 260, 17 P. 2d 906 (1933); *Oxborough* v. *The Murphy Transfer & Storage Co.,* 194 Minn. 335, 260 N.W. 305 (1935); *Jacques* v. *Dayton Power & Light Co.,* 80 Ohio App. 258, 74 N.E. 2d 211 (1947); *Odgers* v. *Clark,* 41 Del. 232, 19 A. 2d 724 (1941); *Scholl* v. *Philadelphia Suburban Transp. Co.,* 356 Pa. 217, 51 A. 2d 732 (1947). Even though the physical evidence may have indicated some negligence on the part of the deceased boy, it certainly cannot be said that it equalled or exceeded Newman's negligence as a matter of law on the motion made for a directed verdict. A different standard applies in determining whether this youth was guilty of negligence. He would only be required to exercise that degree of care which a reasonably careful minor of his age and intelligence would use under similar circumstances. *Garrison* v. *St. Louis, I.M. & S. Ry. Co.,* 92 Ark. 437, 123 S.W. 657.

Of course, a motorist cannot rely upon the assumption that a child pedestrian will act with the same degree of care, caution and circumspection or will remain in a place of safety or obey the rules of the road to the same extent he could if an adult were involved. *Baker* v. *Richardson,* 201 Va. 834, 114 S.E. 2d 599 (1960); *Simmons* v. *Holm,* 229 Or. 373, 367 P. 2d 368 (1961); *Pullen* v. *Novak,* 169 Neb. 211, 99 N.W. 2d 16 (1959); *Ross* v. *Roberts Express Co.,* 100 N.H. 98, 120 A. 2d 335 (1956); *Kennedy* v. *Banks,* 117 Ga. App. 197, 160 S.E. 2d 208 (1968). See also, *Walker* v. *Byrd,* 258 N.C. 62, 127 S.E. 2d 781 (1962). We cannot say that there was sufficient evidence of Brad's negligence in the testimony presented by appellant to bar recovery by appellant or to say that his negligence, if there was any, was the sole proximate cause of his death. The burden of proving negligence on the part of Brad rested upon appellee. *Bates Coal & Mining Co.* v. *Mannon,* 205 Ark. 215, 168 S.W. 2d 408.

We do not consider *McKim* v. *Northwestern National Casualty Co.,* 256 Ark. 109, 505 S.W. 2d 756, relied upon by appellee, as applicable here. In the first place, a child was not

involved. Furthermore, there was nothing to indicate that the motorist in that case ever saw or was able to see the pedestrian, and the collision occurred in the middle of a city block, where the driver would have a right to anticipate there would be no pedestrians in the street. The driver of the automobile may or may not have sounded his horn, or checked his speed. There was nothing in *McKim* to give any indication of speed or failure to keep a lookout.

For error in the direction of the verdict, the judgment is reversed and the cause remanded.

We agree. HARRIS, C.J., and ROY and HICKMAN, JJ.

BYRD, J., dissents.